*T. W. Woolen, D. D. Banta* and *M. M. Ray*, for appellee.

---

## WOODWARD *v*. WILCOX.

27 207
138 283
27 207
153 404

CHATTEL MORTGAGE.—FORECLOSURE.—In a suit by a mortgagee of personal property, against the mortgagor and a junior mortgagee of the same property, to foreclose the mortgage, and to compel the junior mortgagee to account for a portion of the property which he had converted to his own use, no demand for the property, or for an accounting, is necessary before suit.

SAME.—CONTRACT.—CONSIDERATION.—STATUTE OF FRAUDS.—Suit by A, who claimed to hold a senior mortgage upon certain personal property, against B, the mortgagor, and C, who was alleged to be a junior mortgagee. The complaint alleged that B had delivered possession of the property

to C, upon an agreement that C would sell the same, and out of the proceeds first pay the debt of A, secured by the mortgage; that C had sold and converted said property, and failed and refused to pay A's debt, &c.

*Held,* that as the complaint counted upon C's promise to pay A's debt, in consideration of the delivery of the property to him, no averment that A's mortgage had been recorded within the time limited by law was necessary.

*Held,* also, that the receipt of the property by C was a sufficient consideration for his promise to apply the proceeds to the payment of A's debt, and that under the code A might sue for a breach of such contract.

*Held,* also, that the promise of C was not within the statute of frauds.

ESTOPPEL IN PAIS.—To a suit to enforce the lien of a chattel mortgage, against one who claimed under a purchase at sheriff's sale, on an execution against the mortgagor, the defendant pleaded, by way of estoppel *in pais,* that the plaintiff was present at the sheriff's sale, and gave no notice of his lien, &c.

*Held,* that the answer should also have averred that the defendant purchased in good faith, and in ignorance of the plaintiff's lien.

VARIANCE.—Were a variance between the pleading and the proof could have been obviated by an amendment, on the trial, the objection is not available on appeal.

PLEADING.—To a complaint consisting of several paragraphs, separate answers were filed, the fifth answer being directed to the second paragraph of the complaint. The sixth answer, which was directed to the third paragraph of the complaint, was as follows: "And for a further answer to the third paragraph of the complaint, the defendant says that the matters in the above fifth plea contained are true, in manner and form as therein alleged," &c.

*Held,* that such a mode of pleading is not sanctioned by the code.

APPEAL from the *Floyd* Circuit Court.

ELLIOTT, J.—Suit by *Wilcox* against *Jackson* and *Woodward.* The complaint is in three. paragraphs, the first of which prays for a judgment against *Jackson,* on two promissory notes executed by him on the 20th of *May,* 1859, payable to *Wilcox;* one for six hundred and sixty-seven dollars, at one year, with interest from date; the other for six hundred and sixty-six dollars, at two years, with interest from date. It also seeks the foreclosure of a mortgage executed by *Jackson* to *Wilcox,* on the 26th of *May,* 1859, upon certain personal property, to secure the payment of said notes. It further alleges, that *Woodward* claims some interest in the property mortgaged, and makes him a defendant.

Copies of the notes and mortgage are filed with and made
a part of the complaint. The property is described in the
mortgage as "all the books, stationery, wall paper, and
stock in trade generally, and all the fixtures and furniture
of every kind and description, now (then) owned and held
by said party of the first part, in the store rooms (then)
occupied by him as a book and stationery store," &c. The
mortgage was given to secure, in addition to the notes sued
on, another note of the same date, for six hundred and
sixty-seven dollars, payable three years after date, and also
two bills of exchange, each for the sum of one thousand
dollars, dated *May*, 20th, 1859, drawn by *Wilcox* and ac-
cepted by *Jackson*, and payable, one in six and the other
in eight months from date. The second paragraph alleges
that *Woodward*, on the 14th day of *March*, 1861, recovered
a judgment against *Jackson* for three thousand three hun-
dred and forty-seven dollars and eighty-seven cents, and
for the foreclosure of a mortgage to secure the same, on the
same personal property, but junior to the plaintiff's mort-
gage; said mortgage to *Woodward* having been executed
on the 5th day of *June*, 1860; that *Woodward* caused said
property to be levied upon and sold on an order of sale issued
on his said judgment of foreclosure, and that he became the
purchaser of a large amount thereof, and received the pro-
ceeds of the residue, amounting to one thousand five hun-
dred and twenty-two dollars; that said *Woodward*, prior to
said sale, claiming under his said mortgage, seized and took
possession of said mortgaged property, and disposed of and
converted one thousand dollars thereof, in value, to his own
use. Prayer that *Woodward* be compelled to account, &c.
The third paragraph, after alleging the execution of the
notes and mortgage by *Jackson* to *Wilcox*, substantially as
set out in the first paragraph, states that *Jackson* afterwards,
on the 5th day of *June*, 1860, executed and delivered to
*Woodward* another and junior mortgage on the same per-
sonal property, to secure a debt which he owed said *Wood-
ward*, of three thousand three hundred and forty-seven dol-

lars and eighty-seven cents; that said property, at the date of the last named mortgage, was of sufficient value to secure and pay both said mortgage debts; that afterwards it was agreed by said *Jackson* and *Woodward*, "that said *Woodward* should take possession of said store, and sell out said mortgaged property for the best price he could obtain, and pay with the proceeds, first, the said debt due the plaintiff; second, his own debt; and third, to pay the overplus to said *Jackson*;" that, according to said agreement, *Woodward* took possession of the store and of said mortgaged property, and proceeded to sell the same; that the plaintiff, expecting that his said debt would be paid out of the proceeds of the property, pursuant to said agreement, took no steps to secure the same, but suffered *Woodward* to sell said property and collect the proceeds thereof; that *Woodward*, under said agreement, sold a part of the mortgaged property and collected the proceeds of the sales, amounting to four thousand dollars, and converted the remainder of the property to his own use; that the property was sold out to different persons, in small parcels, and taken away, so that it cannot be found for the purpose of being sold to satisfy the plaintiff's debt; that at the time of executing said mortgage, said *Jackson* was, and ever since has been, insolvent, and has no other property subject to execution; and that *Woodward*, though often requested, has failed and refused to pay said debt to the plaintiff. Prayer that *Woodward* be compelled to account for the proceeds of said property and pay the amount of the debt due the plaintiff, &c., and for general relief.

The defendant *Woodward* demurred to each paragraph of the complaint, separately. The demurrers were overruled, and he then filed an answer in several paragraphs, as follows:

1. The general denial. 2. To the second paragraph of the complaint, by way of estoppel, that the plaintiff attended the sheriff's sale of the property referred to in that paragraph of the complaint, and saw the defendant and

others purchasing said property and paying for the same; that he thus stood by and made no objection to said sale, nor gave any notice whatever that he claimed any interest in or title to the said property, and was therefore estopped, &c. 3. To the first and second paragraphs of the complaint, that on the 20th of *May*, 1859, the plaintiff and said *Jackson* were partners, under the firm name of *Jackson & Wilcox*, and as such were the owners of all the chattels in the complaint mentioned; that on said day said *Jackson & Wilcox* executed and delivered to the defendant *Woodward* their mortgage, conveying to him said chattels, which is in full force, and the debts therein set out unpaid. A copy of the mortgage was filed with the answer. 4. In answer to the third paragraph of the complaint, "that all the matters in the above third plea set out are true, in manner and form as the same are therein alleged." 5. In answer to the second paragraph of the complaint, that on the 14th of *March*, 1861, the plaintiff indorsed and delivered to one *John Austin*, the two bills of exchange named in the mortgage executed by *Jackson* to the plaintiff, set out in the complaint; that on the 15th day of *March*, 1861, *Austin* obtained a judgment of foreclosure, in the Court of Common Pleas of *Floyd* county, upon the same mortgage mentioned in the complaint, and upon said bills of exchange, they being first due under the same; that on the 20th of *January*, 1862, *Austin* sued out an execution on said judgment, and on the same day "the goods and chattels in the complaint mentioned were each and every one of them seized by the sheriff of *Floyd* county, *Indiana*, and taken out of the custody of this defendant and sold by the said sheriff, wherefore the defendant prays judgment." 6. "And for further answer to the third paragraph of the complaint, the defendant avers that the matters in the above fifth plea contained are true, in manner and form as they are therein alleged, wherefore he prays judgment."

The plaintiff demurred to the second, third, fourth and fifth paragraphs of *Woodward's* answer. The court sustained the demurrers to the second and third and overruled those to the fourth and fifth paragraphs.

The defendant *Jackson* filed an answer in denial of the complaint, and, as to him, there was a trial on the fifth of *May*, 1864, and judgment for the plaintiff for one thousand seven hundred and twenty-five dollars and fifty cents, and costs, and a decree for the foreclosure of the mortgage.

At the *April* term, 1865, the cause, as between the plaintiff and *Woodward*, was tried by a jury, who found for the plaintiff, and assessed his damages at two thousand and fifty dollars. On the return of the verdict, the plaintiff entered of record a remittitur of two hundred and fifty dollars of the damages so found and assessed by the jury. A motion by *Woodward* for a new trial was overruled. He then moved the court for a judgment in his favor on the pleadings, notwithstanding the verdict of the jury, which motion was overruled, as was also a motion in arrest of judgment. Judgment was then given for the plaintiff for one thousand and eight hundred dollars and costs. To all of which rulings the defendant *Woodward* excepted, and appeals to this court.

The first point presented by the appellant is, that the Circuit Court erred in overruling the demurrer to the second paragraph of the complaint. The first objection urged to that paragraph is, that it contains no averment that the plaintiff's mortgage was recorded in the recorder's office of the county within ten days after its execution, and that in the absence of such an averment it must be deemed to be void, as to the defendant *Woodward*, under section ten of the statute of frauds. 1 G. & H., 352. It is not averred in the paragraph, in terms, that the mortgage was recorded. The copy of the mortgage filed with and made a part of the complaint, contains a proper certificate of acknowledgment, and also the following statement:

"Indorsed, 'Received for record *May* 27, 1859, at six o'clock P. M., and recorded in mortgage record vol. 3, pages 244 and 245.    JAMES G. HARRISON,

R. F. C.'"

If this indorsement can be regarded as forming a proper part of the copy of the mortgage which the statute requires to be filed with the complaint, then, under section seventy-eight of the code, (2 G. & H., 104,) the mortgage not being copied in the complaint, it forms a part of the record, and would be a sufficient showing that the mortgage was duly recorded. But we need not decide that question in this case, as its decision in favor of the appellant would not reverse the judgment, for the reason, which will more fully appear hereafter, that the verdict of the jury was evidently based on the third paragraph of the complaint.

For the purposes of this action, no demand of the goods, or for an accounting, was necessary to be made of *Woodward*. It is not an action of trover or replevin, to recover the possession of the goods, or their value, by proving a conversion of them, by a refusal to deliver them on demand. The object of the paragraph was to procure a foreclosure of the mortgage, and to subject the property not converted to the payment of the plaintiff's debt, and if actually sold and converted by *Woodward* to his own use, to compel him to account for the proceeds.

The second error assigned is that the court erred in overruling the demurrer to the third paragraph of the complaint.

It is also objected to this paragraph that it does not show that the plaintiff's mortgage was recorded. But a failure in that respect does not, we think, render the paragraph bad. It alleges an indebtedness by *Jackson* to the plaintiff for the amount of the notes intended to be secured by the mortgage, and a delivery of the property named in the mortgage by *Jackson* to *Woodward*, under the agreement of the latter to sell the property and apply the proceeds to the payment of the plaintiff's debt against *Jackson*. The paragraph is not, in fact, founded on the mortgage, but

on *Woodward's* agreement to sell the property and pay the debt out of the proceeds. The sufficiency of the paragraph, therefore, does not depend upon the validity of the mortgage, but upon the debt due the plaintiff from *Jackson*, and *Woodward's* promise to pay it out of the proceeds of the property. The mortgage, though not recorded, was good as between the plaintiff and *Jackson*. The debt evidenced by the notes was a valid one, and if *Woodward* received the property from *Jackson* under an agreement to sell it and apply the proceeds in payment of the debt, as alleged in the complaint, he is not in a condition to controvert the validity of the mortgage on account of its not being duly recorded.

The appellant further objects to the paragraph upon the ground that there is no consideration alleged therein to support the promise to pay the debt of *Jackson* to *Wilcox*. The alleged receipt of the property by *Woodward* from *Jackson*, in trust, was a sufficient consideration to support the promise of *Woodward* to sell it and apply the proceeds, as stated in the complaint, to the payment of the debts of *Jackson* to the plaintiff and *Woodward*. Aside from the question of *Wilcox's* lien on the property by virtue of his mortgage, *Wilcox*, under the former rulings of this court, could not, perhaps, have maintained an action at law against *Woodward* for the money, because the consideration for the promise did not move from him. *Farlow* v. *Kemp*, 7 Blackf. 544. But in equity the rule is otherwise. *Fausler* v. *Jones*, 7 Ind. 277; Story's Eq. Jur., §§ 1041—1044. Whether *Wilcox* could have maintained a suit at law, upon the facts alleged in the complaint, is not material to the decision of the question under consideration, as it is clear to our minds that the paragraph presents a good cause of action in his favor under the code. The promise was made to *Jackson*, as we have seen, upon a sufficient consideration, to pay the debt of *Jackson* to the plaintiff, out of the proceeds of the sale of the property, and was not within the statute of frauds, requiring a promise

to answer for the debt, default or miscarriage of another, to be in writing. See note 1 to *Murphy* v. *Merry*, 8 Blackf. 295, and authorities cited.

The Circuit Court did not err in sustaining the demurrers to the second and third paragraphs of *Woodward's* answer. The second paragraph alleges that the plaintiff was present at the sheriff's sale of the property, referred to in the second paragraph of the complaint, and stood by during the sale, and gave no notice of his lien on the property, but it fails to allege that *Woodward* purchased in good faith, in ignorance of such lien.

The third paragraph sets up a prior mortgage to *Woodward* of the same property, in bar of the action. It could not have that effect. If there had been a breach of the conditions of that mortgage, *Woodward* could set it up and ask that it should be first satisfied, but its mere existence could not bar the plaintiff's action. The plaintiff does not claim the possession of the property in the complaint, and the question of the right of possession is not involved, nor does the defendant in the third paragraph of the answer claim to be in possession of the property by virtue of the mortgage referred to in that paragraph.

The ruling of the court in overruling *Woodward's* motion for a new trial is the next question urged for a reversal of the judgment.

The second and third causes assigned for a new trial are: 2. That the verdict is contrary to the evidence given in the cause. 3. That the damages given by the jury are excessive, and not warranted by the evidence.

The evidence is made part of the record by a bill of exceptions, and is, in substance, as follows: *Jackson* and *Wilcox* were in partnership in the book trade. They were indebted to *Woodward*, and he was further liable for them as their indorser or accommodation acceptor, and held a mortgage on their stock in trade as security. On the 20th of *May*, 1859, they renewed the mortgage by the one set out in the third paragraph of *Woodward's* answer,

which was afterwards given in evidence. On the same day, *Wilcox* sold out to *Jackson* his interest in the book store, for which *Jackson* executed to him the acceptances and notes described in the mortgage in suit, on the 26th of the same month. On the 5th of *June*, 1860, the debts and obligations secured by the mortgage of *May* 20th, 1859, being due and unpaid, *Jackson* gave *Woodward* new paper, and executed to him another mortgage, not in satisfaction of the former one, but as an additional one, on the same stock of books, &c. *Jackson* testifies that in *March*, 1861, he told *Woodward* that his (*Jackson's*) creditors were pressing him, and that he (*Woodward*) had better foreclose his mortgage; that a part of the notes held by *Woodward* not then being due, he took them up and gave new ones, which were due; that *Wilcox* had assigned to *Austin* the two acceptances secured by the mortgage from *Jackson* to him, they being due and payable before the notes here sued on by *Wilcox;* that on the 14th of *March*, 1861, he confessed a judgment in favor of *Woodward*, in the Court of Common Pleas of *Floyd* county, on said notes and mortgage, for three thousand three hundred and forty-seven dollars and eighty-nine cents and costs of suit; that on the fifteenth of the same month, he also confessed a judgment in favor of *Austin*, on said acceptances and the mortgage executed to *Wilcox*, for the sum of two thousand one hundred and forty-six dollars and seventy cents; that he confessed said judgments under an agreement with *Woodward* that he should take possession of the store and all the stock, and carry on the business in his own name until, from the proceeds, he paid, first, his own debt, second, *Austin's* judgment, and third, the amount due to *Wilcox*, (the notes now in suit,) and the remainder to be delivered back to him, (*Jackson;*) that *Woodward* was not to sue out any execution on his judgment without *Jackson's* consent; and that *Woodward* took possession of the store and goods under said agreement.

*Woodward,* the defendant, testifies that he never made any such agreement as sworn to by *Jackson;* that *Jackson* came to him and said he was embarrassed, and that he (*Woodward*) must take the stock for his own protection; that they then went to Judge HOWK, and he took possession accordingly; that *Jackson* confessed judgment for the amount due him, (*Woodward,*) and the stock was sold by the sheriff, and he purchased it.

*Wilcox,* the plaintiff, testifies that Judge HOWK, *Woodward's* attorney, proposed to arrange the matter so as to pay *Austin* in full, and that he (*Wilcox*) should be paid the greater part of his claim. "HOWK said the arrangement was that *Woodward* should give up his notes, and *Jackson* should give up the stock of books to *Woodward;* that the notes and the debt due to *Woodward* were to be paid out of the books. HOWK said he thought there was enough to pay all the debts. *Austin's* debt and *Woodward's* were to be paid first, and then mine," &c. "The understanding was that *Woodward* should run the book store until all the debts were paid. He did run it until *August,* 1861, and after that he claimed it as his own property. *Woodward* told me that he had all along claimed the property as his, after his sale."

HOWK testified, that as the attorney and agent of *Woodward,* and by his direction, he took possession of the stock of books in *Jackson's* store; that he did not, at any time, inform *Wilcox* that *Woodward* was to arrange his debt; that he knew of no such arrangement as testified to by *Jackson;* that *Woodward* took possession under his mortgage, solely for his own protection. "*Jackson* said he was unable to go on, as executions were pressing him, and *Woodward* must take possession for his own protection. I do not know what may have passed between *Woodward* and *Jackson.*"

An execution was issued on *Woodward's* judgment, under which the sheriff levied on and sold the entire stock of goods, in *August,* 1861. *Woodward* became the purchaser of the greater portion of them. The sale amounted, in

gross, to one thousand six hundred dollars. In *January*, 1862, executions, issued on *Austin's* judgment and on other judgments against *Jackson*, were levied by the sheriff on all the said stock of books, &c., then in *Woodward's* possession. They were taken from his possession and sold by the sheriff on said executions. They brought, at the sale, one thousand one hundred and seventy-five dollars, from which the costs and expenses were deducted, leaving nine hundred and forty-eight dollars, which was applied to the several executions.

*Jackson* further testified that *Woodward* had the goods levied on and sold on his judgment, in his (*Jackson's*) absence and without his assent; that at the time he purchased out *Wilcox's* interest, the whole stock was worth seven thousand dollars, and at the time *Woodward* took possession he thought the stock worth seven thousand five hundred dollars; that he examined the stock while it was in the possession of the sheriff, a short time before the last sale; it was then from two to three thousand dollars less in value than when *Woodward* took possession, in *March*, 1861.

*Thurman*, the deputy sheriff, testified that the sale under *Woodward's* execution was public and fair, and conducted as such sales usually are. It lasted six or seven days. *Woodward* was the principal purchaser. Others purchased to the amount of about three hundred dollars; that there was about one-third more levied on and sold at the first sale than at the second.

*Wilcox*, the plaintiff, further testified that "the stock of books, when *Woodward* got it, was worth as much as at the time of the dissolution of the firm of *Jackson* and *Wilcox*, but at the time the levy was made under the *Austin* writ, and the property taken out of the possession of *Woodward*, the stock was reduced one-half."

*Lucien G. Matthews*, introduced by the defendant, testified that he was a book dealer, and had been for over ten years, and once owned a portion of the stock of books in contro-

versy; that he saw the stock just before *Woodward* took possession of it; it was then worth about four thousand dollars.

*John R. Nunnemacher* testified that he saw the goods when they were last levied on and taken from the possession of *Woodward*. The stock was then worth two thousand dollars. "The most of it was very old and unsaleable, and had been owned by several book dealers before them."

It is very apparent that the facts, as presented by the evidence, differ materially from those alleged in the complaint. It is claimed in both the second and third paragraphs of the complaint, that the mortgage to the plaintiff was older, and entitled to priority over the mortgage to *Woodward*, and, under the agreement between *Woodward* and *Jackson*, set up in the third paragraph, it is averred that the plaintiff's debt was first to be paid, and then the debt due to *Woodward*. But by the agreement as testified to by *Jackson*, *Woodward's* debt was to be paid first, *Austin's* second, and *Wilcox's*, the plaintiff's, third; that *Woodward's* mortgage, in truth, held priority to that given to *Wilcox*. The priority of *Woodward's* judgment was conceded by *Wilcox* in his evidence, and he expressly testified that the understandig was that *Woodward's* debt was first to be paid, and then *Austin's*, before anything was to be applied to the payment of his notes. The mortgage to *Woodward*, upon which his judgment of foreclosure was rendered, was given after the mortgage to *Wilcox*, but it expressly saved *Woodward's* rights under his previous mortgage of *May* 20, 1859. The latter mortgage was given in evidence, and it was conceded on the trial, and so charged by the court, that both *Woodward's* and *Austin's* claims were prior to the plaintiff's. It is so conceded by the appellant's counsel in this court.

The variance between the agreement of *Woodward* and *Jackson*, as alleged in the third paragraph of the complaint, and that as testified to on the trial, could have been obviated by an amendment of the complaint during the trial, and the judgment should not be reversed on that account.

This suit was commenced in *October*, 1861, after the property was sold on *Woodward's* execution, for less than the amount due thereon, but before the levy on *Austin's* execution. *Woodward's* prior right being conceded, no reason appears upon the record, in the absence of the alleged agreement between him and *Jackson*, why his right to the property purchased at the sheriff's sale was not valid and absolute. The third paragraph, setting up the agreement between *Woodward* and *Jackson*, did not constitute a part of the original complaint, but was filed as an amendment, long after the property remaining in *Woodward's* possession was seized by the sheriff and sold on the execution in favor of *Austin* and others. It is claimed under the third paragraph, that the levy and sale of the property under *Woodward's* execution was in violation of his agreement with *Jackson*, and was therefore fraudulent and void as to *Austin* and *Wilcox*. The evidence, as we have seen, is by no means conclusive that such an agreement was made. *Woodward* expressly denies it, and he is in a measure corroborated by HOWK. But it is not our purpose to pass upon the strength or preponderance of the evidence, nor is it necessary that we determine the question as to the validity of the sale under *Woodward's* execution, but conceding it to be invalid, and giving *Wilcox* the benefit of the strongest view possible to be drawn from this evidence, and then how stands the case? *Jackson* swears that he thinks the stock of goods, when *Woodward* took possession of it, was worth seven thousand five hundred dollars, and that when the goods were seized by the sheriff on the execution in favor of *Austin*, and taken out of *Woodward's* possession, they were from two to three thousand dollars less in value and quantity than when *Woodward* first took possession. Allowing the difference to be three thousand dollars, the highest sum stated by *Jackson*, it is less than the amount of *Woodward's* judgment, at the date of its rendition. *Wilcox*, in giving his evidence, did not express any opinion as to the value of the goods when *Woodward* took possession, further than that they

were worth as much at that time as when he sold out to *Jackson*. *Jackson* states the value at the latter period at $7,000. But *Wilcox* testified that at the time the goods were seized under the *Austin* execution and taken from *Woodward*, "they were reduced one-half," Supposing this statement to apply to value, as well as quantity, and taking the estimate of *Jackson* as to the value, $7,500, at the time *Woodward* first took possession, it makes the difference $3,750. *Woodward's* judgment, at the date of its rendition, *March* 14, 1861, exclusive of costs, was $3,347 89, a sum nearly sufficient to cover the whole amount with which it is possible, under the evidence, to charge *Woodward*. *Austin's* judgment was rendered *March* 15, 1861, for $2,146 70. Admitting that the whole net proceeds of the last sheriff's sale, $948, should have been credited on *Austin's* execution, and it leaves a balance of $1,198 70 due on his judgment, which has priority over the claim of *Wilcox*. This sum, added to *Woodward's* judgment, makes an aggregate far exceeding the highest amount with which, under the evidence, it is possible to charge *Woodward*. No view of the case can be taken from the evidence by which the verdict of the jury can be sustained. The Circuit Court erred, therefore, in overruling the motion for a new trial.

Errors are assigned on certain instructions given by the court to the jury. These we cannot notice, further than to say, that though we have not given them a critical examination, they seem to be substantially correct.

It is also contended by the appellant that the court erred in overruling his motion for a judgment on the pleadings, notwithstanding the verdict. No replication was filed to what are called the fourth, fifth and sixth paragraphs of the answer. The motion was in general terms, and we think it is evident that the attention of the court was not called to the fact. The fifth paragraph of the answer applied to the second paragraph of the complaint. It set up a sale of the property under the *Austin* judgment, and was perhaps a good answer to that paragraph. The fourth and sixth

paragraphs were bad, and we notice the point for the purpose of expressing our disapprobation of such a mode of pleading. In form and substance they are the same. We copy the sixth: "And for a further answer to the third paragraph of the complaint, the defendant avers that the matters in the above fifth plea contained are true, in manner and form as they are therein alleged, wherefore he prays judgment." We may suppose the pleader intended, by this averment, to apply the fifth paragraph of the answer as well to the third as to the second paragraph of the complaint, but even that was not accomplished. As we understand it, the language used, as applied to the third paragraph of the complaint, means that the plaintiff ought not to maintain his action on the third paragraph of the complaint, because the defendant had set up a valid and truthful answer to the second paragraph. But whatever may be its proper meaning, we cannot sanction such a mode of pleading. It is without precedent, and to do so would be to disregard the provision of the code requiring that each ground of defense, containing new matter, shall be stated in plain and concise language, without repetition, in a separate paragraph, and numbered, and clearly refer to the cause of action intended to be answered. It would encourage indolence and confusion, at the expense of all form and certainty in legal proceedings.

The judgment is reversed, with costs, and the cause remanded for a new trial, with leave to both parties to amend their pleadings.

*H. Crawford,* for appellant.

*J. S. Davis, J. E. McDonald, A. L. Roache* and *D. Sheeks,* for appellee.