161 So.2d 495

**COLONIAL ENTERPRISES, INC.**

v.

**Talvin C. HARRIS et ux.**

**6 Div. 986.**

Supreme Court of Alabama.

Feb. 20, 1964.

Nelson Vinson, Hamilton, for appellees.

Fite & Thomas, Hamilton, for appellant.

HARWOOD, Justice.

In the proceedings below the complainants, Talvin C. Harris and Louise Harris, filed their bill seeking to enjoin the fore-

closure of a mortgage held by Colonial Enterprises, Inc., upon certain real property owned by the complainants, and further requesting that the court determine the amount due under the mortgage.

The bill alleges that the complainants "executed a mortgage, and possibly a note to secure said mortgage, to Deeb Construction Company, whose legal entity is to the complainants unknown;" that the mortgage is dated 14 October 1958, and duly recorded, and was transferred by the Deeb Construction Company to the Andrew Jackson Life Insurance Company, said assignment being recorded in the office of the Probate Judge of Marion County, Alabama, and that said mortgage covered lands described as: Northwest Quarter of the Southwest Quarter of Section 8, Township 11, South, Range 14 West, Marion County, Alabama.

Paragraph 3 asserts that the mortgage "was to secure only an indebtedness of $2395."

Paragraph 4 asserts that through mutual mistake of the parties or by fraud or misrepresentation on the part of the agent for the Deeb Construction Company, the complainants were induced to execute a mortgage in the amount of $3552, in that the agent of Deeb Construction Company "stated to the complainants that interest on said indebtedness for a period of 60 months at the rate of 6 per cent per annum calculated upon the unpaid balance would amount to $1157," and through this misrepresentation of the agent of the Deeb Construction Company, the complainants, who are persons with no education or meager education, and who were unable to calculate the said interest in said amount, did sign the said mortgage.

Paragraph 5 asserts that Colonial Enterprises, Inc., is not a bona fide holder in due course because it is a mere holding company for Deeb Construction Company.

Paragraph 6 asserts that the mortgage is based upon usury.

Paragraph 7 and 8 set forth that the complainants have paid to the respondent or the other holders of said mortgage the sum of $2072, and that the respondent now informs the complainants that there is due on said mortgage the sum of $1501.71.

Paragraph 9 avers that the complainants have offered to pay the legal amount due on the mortgage, which offer has been refused by the respondent.

Paragraph 10 sets up certain alleged irregularities in the mortgage in that the mortgage does not provide for the place of sale, and provides that the premises may be sold upon default by posting notices at three public places advertising the terms of the sale.

Paragraph 11 asserts that the complainants had deposited with their attorney the sum of $1400 with which to pay the balance due on the indebtedness.

Paragraph 12 sets forth that the respondent has notified complainants by letter that a foreclosure sale of the property described in the mortgage would be held on 14 February 1962, in front of the court house of Marion County, Alabama, for cash to the highest bidder, and

Paragraph 13 asserts that such foreclosure would be injurious to the complainants and they have no adequate remedy at law for injury from such foreclosure.

Paragraph 14 alleges that there is a dispute as to the amount due the respondent; that the complainants are ready, willing, and able to pay the respondent the amount that they are legally due to pay to satisfy the indebtedness.

The complainants pray that the respondent be enjoined from foreclosing the mortgage; that the court will determine the amount due by the complainants to the respondent; that the respondent not be permitted to recover any interest on the indebtedness because of usury.

The complainants offered to do equity and assert they are prepared to pay the amount the court may determine to be le-

gally due under the mortgage, and they also pray for general relief.

On the day the bill was filed the court entered an order enjoining the foreclosure of the mortgage pending further order of the court.

Thereafter the respondent filed a demurrer to the bill based on the general grounds of lack of equity in the bill.

The demurrer being overruled the respondent filed its answer alleging "defendant denies each and every allegation contained in said complaint and demands strict proof thereof."

At the hearing below, Mr. and Mrs. Harris testified to the effect that they became interested in buying a "shell home" and went to the Deeb Construction Company in Tupelo, Mississippi, to look over their offerings. There, Royce Bullock, the salesman or manager of the Deeb Construction Company, showed them various shell homes. They selected a "Flamingo" home and they were informed by Mr. Bullock that the price of this home was $2395, and according to Mr. Harris, Bullock told him that "if I wanted to pay the house off that the interest would stop then."

The next day, Monday, Bullock came to Marion County and in company with the complainants went to the home of Charlie Franks, a notary public, where a promissory note and a document entitled a mortgage were executed by the complainants, payable to the Deeb Construction Company. The note was in the amount of $3552, payable in 60 monthly installments of $59.20 each, the first installment being due and payable on the first day of November 1958, and a like payment coming due on the same day of each succeeding month until paid in full, together with interest of 8 per cent on all unpaid payments from and after maturity.

The mortgage securing the promissory note is largely in form a crop mortgage, but in addition to granting to the Deeb Construction Company the entire crop of corn, cotton, and other crops of every description raised by the complainants for the years 1958, 1959, and 1960, also includes the northwest quarter of the southwest quarter of section 8, township 11, south, range 14 west. The mortgage provides that the property may be sold at public or private sale at ———, Alabama, (sic) after advertising the same for ten days by posting notices in three public places in Marion County.

This mortgage, being in an amount of five hundred dollars or more, could not be validly foreclosed under the provisions of sale contained in the mortgage. Section 171, Title 47, Code of Alabama 1940, requires that foreclosure of mortgages in the above amount be advertised once a week for three consecutive weeks in a newspaper published in the county where the land is situated.

Mr. and Mrs. Harris testified that when they inquired of Bullock as to the difference between the agreed sale price of $2395, with six per cent interest on the unpaid portion of such purchase price, he informed them that the $3552 payable in 60 monthly installments of $59.20 each, was the amount due as interest and carrying charges on the installment payments. They testified that they had little education, could not calculate interest, and accepted Bullock's statement of the amount due as being the correct amount.

On cross examination both complainants testified that they had signed the note and mortgage as it was written.

It being stipulated that the complainants had made thirty-five payments of $59.20 each, totalling $2072, the respondent's evidence was directed toward showing that under the note and mortgage there was a balance due of $1503.83, plus $114 covering attorney's fee, and advertising expenses in connection with the enjoined foreclosure.

The evidence shows that the mortgage and note were transferred to the Andrew Jackson Insurance Company by the Deeb

Construction Company with full right of recourse. It further shows that the note and mortgage were transferred by the Andrew Jackson Insurance Company to the Colonial Enterprises, Inc., without recourse.

Mr. Howard Ross, attorney for the respondent, testified that Federal Shell Homes, Inc., was the successor of the Deeb Construction Company and that Federal Shell Homes, Inc., owns all of the stock of Colonial Enterprises, Inc.

Mr. John Gross, Vice President of Colonial Enterprises, Inc., testified that there is a difference between the cash price of a home and the credit price, and the credit price includes discount charge which the building company must pay to place the paper with the lender. He stated he was not familiar with the conduct of the business of Colonial Enterprises, Inc., to the point that he could say what was the cash price of the house purchased by the complainants, but by working backwards from the total he would say that the cash price would be approximately $2400.

The court, after hearing the evidence, entered its judgment and decree. The court found that the sum due by complainants to respondent on the note and mortgage to be $1017.20; that upon payment of this sum by complainants to respondent the respondent be permanently enjoined from foreclosing the mortgage, and upon receipt of such sum the respondent was ordered to satisfy the mortgage of record.

From this order, judgment, and decree, the respondent perfected this appeal. However, for clarity, the appellant-respondent will hereinafter be referred to as respondent, and the complainants-appellees as complainants.

Assignments of error Nos. 2 and 3 are grouped for argument, and pertain to alleged errors resulting from the court's action in overruling appellant's objections to questions propounded to Mr. Harris on direct examination.

Assignment 2 relates to the following question: "Q. What did Mr. Bullock tell you on this occasion?" (The occasion referred to was the visit of appellees to appellant's place of business in Tupelo.)

Assignment 3 involves the question: "Q. What interest rate did Mr. Bullock tell you that the indebtedness would bear?"

The ground of each objection respectively was that Bullock's authority as agent of Deeb Construction Company had not been shown.

There is no merit in either of these assignments.

The appellants were seeking to avail themselves of a contract made by Bullock as agent of Deeb. The law is well established that while one dealing with an agent is bound to know the extent of the agent's authority, yet when a principal seeks to avail himself of a contract made by his agent, whether such agent be appointed or self constituted, it is the duty of the principal to inform himself as to what representations may have been made. This is true regardless of the fact that the agent had no authority to make such representations. Abercrombie v. Martin and Hoyt Co., 227 Ala. 510, 150 So. 497, and numerous authorities cited therein.

Assignments of error 8 and 9 are likewise grouped for argument.

Assignment 8 asserts that: "The trial court erred in rendering a decree on the 30th day of October 1962, in which decree the court ordered complainants to pay to the defendant the sum of $1017.20."

Assignment 9 asserts: "The trial court erred in not rendering a decree ordering complainants to pay to the defendant the sum of $1617.83."

The demurrer to the bill asserting only general grounds that there is no equity in the bill, that no facts are alleged giving rise to an equitable cause of action, and that the facts alleged justify no equitable relief, was overruled

This action of the court was not argued as error in the brief.

We must therefore consider the allegations of the bill as taken as true. 8 Ala. Dig., Equity, ☞239.

The answer merely denied every allegation of the bill and demanded strict proof thereof.

In argument in brief in support of assignments 8 and 9, counsel directs his argument toward establishing that the respondent below was a holder in due course and immune to defenses which might be available against the original holder, unless it be shown that it, as purchaser of the note, had notice of such defenses; and further, that even though the credit price for which goods are sold exceeds the cash price to the extent not permitted by the usury laws, such will not render the transaction usurious if the parties acted in good faith. See Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437.

Without intimating that merit attaches to this argument, we must pretermit consideration thereof under the state of the pleading.

■ This being a suit in equity, the controlling question arises out of the bill and answer. Morrison v. Federal Land Bank of New Orleans, 232 Ala. 138, 167 So. 288.

In Adams v. Baker, 268 Ala. 256, 105 So.2d 703, this court quoted with approval the following observation made in Gamble v. C. Aultman and Co., 125 Ala. 372, 28 So. 30:

"'* * * As said by Mr. Daniel, (1 Dan.Ch.Pl. & Pr., 711, 713): "It is of great importance to the pleader, in preparing an answer, to bear in mind that besides answering the plaintiff's case as made by the bill, he should state to the court upon the answer all the circumstances of which the defendant intends to avail himself by way of defense; for a defendant ought to apprise the plaintiff by his answer of the nature of the case he intends to set up, and that, too, in a clear, unambiguous manner; and, in strictness, he cannot avail himself of any matter of defense which is not stated in his answer, even though it should appear in his evidence." The answer must put in issue all the facts on which the defendant relies in bar of the relief sought by the bill, and evidence cannot be adduced of facts outside of these issues; otherwise, the answer does not apprise the complainant of the line of defense which will be resorted to, nor afford him that opportunity for preparation to meet it which is the leading purpose of all pleading, and which the complainant is always entitled to with respect to a matter of defense affirmative in character and relied on to defeat and overturn a prima facie case made by the bill.—Wood v. Pebbles, supra [121 Ala. 100, 25 So. 723]; Freeman v. Stuart, supra [119 Ala. 158, 24 So. 31]; Robinson v. Moseley, 93 Ala. 70, 9 So. 372; Moog v. Barrow, 101 Ala. 209, 13 So. 665. '"

In the present case the answer constituted only a general denial.

■ Affirmative defenses should be specially pleaded to be availing. Adams v. Baker, supra, and cases cited.

■ The defense of holder in due course is an affirmative defense, and depends on new matter by way of avoidance. Every fact and circumstance necessary to make out such defense must be alleged in the answer. 59 C.J.S. Mortgages § 646c(1); Mann v. State ex rel. Lee, 116 Ind. 383, 19 N.E. 181; Woodward v. Wilcox, 27 Ind. 207; Smalling v. Kreech, (Tenn.Ch.App.), 46 S.W. 1019.

The court in its decree found that the sum of $1017.20 was the amount due by the complainants under the mortgage, and decreed that upon payment of this sum by complainants to respondents, the respondents be permanently enjoined from foreclosing the mortgage, and upon receipt of

said sum the respondent was ordered to satisfy the mortgage of record.

The court did not set out its method of calculating the amount due on the mortgage. It is apparent that under any method of calculation, after allowing complainants credit for the amount already paid on the mortgage, and full allowance for interest on the remainder at either 6% or 8%, the amount found to be due is ample to fully pay the balance owed.

■ In brief counsel for complainants below state that the court should have decreed that complainants pay only $612 as the balance due on the mortgage. However, counsel asserts that no steps have been taken by complainant-appellees by way of cross bill, or cross assignments of error to question the amount found to be due, and assert that even though the amount decreed by the court be excessive, the decree "must be sustained." We therefore, in view of complainants not questioning the amount decreed by the court, will not review this matter.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.