# Bates, Kingsberry & Co. v. Vandiver & Co.

## *Statutory Claim Suit.*

1  *Fraudulent conveyance; payment of pre-existing debt.*—A sale by an insolvent debtor of goods to one of his creditors, in payment of a pre-existing debt, which is *bona fide*, and the property sold was received at its reasonably fair market value, and no benefit was secured to the debtor, is a valid conveyance against other creditors of the failing debtor, without regard to the motives or intentions of such debtor, and notwithstanding the parties knew that the effect of the transaction would be to prevent the other creditors from collecting their debts.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. J. M. CARMICHAEL.

Bates, Kingsberry & Co. sued out an attachment on a stock of goods, which had been formerly owned by one J. B. Grant. The attachment was based on an affidavit, alleging that the said Grant was about to fraudulently dispose of his goods. The ground of the plaintiffs' claim was three promissory notes executed to them by said Grant. Upon the levy of said attachment, W. F. Vandiver & Co., after making affidavit and executing bond, instituted a claim to said property so levied upon. Upon the trial of the issues involved in this claim suit the plaintiffs, after offering in evidence the promissory notes, which were the foundation of the suit, introduced evidence tending to show that, at the time the attachment was levied, the goods, wares, and merchandise so levied upon were in the storehouse owned and occupied by said Grant, and in the possession of said Grant. In rebuttal to this testimony, the claimants offered testimony tending to show that, prior to the levy of said attachment, the claimants had purchased and received the goods claimed by them in this case from said J. B. Grant, in payment of an antecedent debt due them by Grant, and that the value of the goods was not greatly disproportionate to the amount of said debt.

The plaintiffs offered a bill of sale made by said Grant

to the claimants in evidence; and offered testimony tending to show that said bill of sale was drawn by A. H. Thomas, Esq., and under his direction, several days before the sale was made; that it was left blank with the understanding that it should be filled in if Grant could not arrange his debts, and if it should be necessary for Grant to discontinue business. There was further evidence for the plaintiffs tending to show that numerous other bills of sale to various other creditors were drawn in substance and form the same as the bill of sale to the claimants, as introduced in evidence, and that these several other bills of sale were held by said Thomas, as was the bill of sale in this case; that said Thomas during this time was acting as the retained attorney of the said Grant, and also of the claimants in this suit, as well as the various other preferred creditors. It was shown that the sales to the preferred creditors were made at night after ten o'clock. There was also evidence introduced for the plaintiffs tending to show that at the time said bills of sale were drawn it was understood by said Thomas and the said Grant, that he, the said Grant, should continue his business in the regular way, and that when he was able to continue no longer on account of the pressure of debts, the bills of sale were to be filled in and executed. There was also evidence introduced tending to show that on the night of the sale to the preferred creditors, when Thomas and Grant were in the store with the attorney of the attaching creditors, Thomas said that it was understood that the preferred creditors were not to take the goods received by them from Grant, but that Mrs. Grant, the wife of J. B. Grant, was to purchase said goods, and continue the business in said store in her own name, in order to pay said preferred creditors the amount of their several debts; that in four days after said sales and said levy, the goods were claimed by said creditors, through said Thomas, and all of the entire stock was turned over to Mrs. Grant; that she went into possession of the same, and afterwards paid the claimants, and the other preferred creditors the amounts due them, without reference to the value of the goods—she having purchased the goods from the several preferred creditors, through said Thomas, at a price fixed by said J. B. Grant and Thomas at the time of the sale by said Grant to said creditors.

The claimants introduced evidence to show that the date filled in the bill of sale to claimants was wrong, and that the date should have been August 26th, instead of August 31, 1891.

Upon the introduction of all the evidence in the case, the plaintiffs requested the court to give the following charges : (1.) "If the jury believe, from the evidence in this case, that the bill of sale made by Grant to W. F. Vandiver & Co. was drawn by Thomas several days before August 26, 1891, and that it was agreed between the parties that the bill of sale should be held by Thomas, as attorney for W. F. Vandiver & Co., until Grant was forced to close up and quit business, and that in the mean time Grant was to be allowed to remain in possession of the entire stock including the goods intended to be included in said bill of sale, selling them for his (Grant's) own benefit, then the bill of sale is fraudulent, and your verdict will be for the plaintiffs." (2.) "If the jury believe from the evidence in this case that, at the time the bill of sale was made, Grant and W. F. Vandiver & Co. fixed the value of the goods conveyed thereby at $218, then the claimants are estopped from denying that said goods were not worth $218." (3.) "If the jury believe from the evidence in this case that some time between August 15, 1891, and August 26, 1891, A. H. Thomas, as attorney for the claimants at the time, had an interview with J. B. Grant in respect to his mercantile business, and that Grant hired said Thomas as his attorney, and that at that time the said Thomas was the attorney for the claimants and also of Grant, and if the jury further believe from the evidence in this case that while Thomas was so acting as attorney for said claimants and said Grant, he, Thomas, advised said Grant to sell said claimants enough goods out of his stock to pay said debt due claimants, and said Grant agreed to do so, and that they, said Grant and Thomas, agreed to have a bill of sale written up with the understanding between said Thomas and Grant that said bill of sale was not to be thus executed, but was to be held by said Thomas until Grant found out he could not continue business longer, and then the bill of sale was to be dated, and the goods conveyed thereby delivered to said Thomas, as said attorney for claimants, and that said Grant still remained in possession of all his stock of goods, selling

them in the usual way, for his own benefit up to August 26, 1891, then said transaction is fraudulent and void, and you will find for plaintiffs." The court refused each of these charges. The plaintiffs separately excepted to the refusal of the court to give each of said charges, and also separately excepted to the court giving the following written charges requested by the claimants: (1.) "The fact, if it be a fact, that Thomas was a willing tool for Grant does not affect the title of Vandiver & Co., if it be shown from the evidence that Grant owed Vandiver & Co. the sum of $144, that he paid the same by the sale of goods mentioned in the bill of sale, that the sale was absolute, at a fair price, and not greatly disproportioned to said amount of $144, and that he, Grant, reserved no use or benefit therein, the verdict will be for the claimants." (2.) "The fact, if it be a fact, that Grant ordered goods a few days before he failed does not affect the claimants in this case, if it be shown from the evidence that Grant owed Vandiver & Co. the sum of $144, and in payment thereof sold and delivered to them goods, wares and merchandise not greatly disproportionate in value thereto, and reserved no benefit to himself; then if these facts be shown the jury will find for the claimants." (3.) "The court charges the jury that if J. B. Grant sold the goods to W. F. Vandiver & Co. in payment of a just debt past due, at a price not materially less than the value of the goods, and reserved no interest or benefit to himself in the goods so sold to Vandiver & Co., the jury will find a verdict for claimants, W. F. Vandiver & Co., even if there was a fraudulent intent on the part of one or both of the parties to the transaction." (4.) "Before the jury can find for the plaintiffs in this case, they must show a state of facts which not only casts a suspicion on the sale of the goods by Grant to W. F. Vandiver & Co., but must show a state of facts which are not fairly and reasonably reconcilable with fair dealing and honesty of purpose, otherwise they must find for the claimants, W. F. Vandiver & Co." (5.) "Even if the sale of the goods was made hurriedly in the night, and Mr. Grant sold the goods to W. F. Vandiver & Co. for the purpose of defrauding his other creditors, and W. F. Vandiver & Co. knew of that purpose, yet if they bought the

goods, at a reasonable price, to pay an honest debt past due from Grant to Vandiver & Co., reserving no use or benefit in the goods to Grant, they not participating in Grant's fraudulent intent or purpose, then the jury must find a verdict for the claimants, W. F. Vandiver & Co." (6.) "It makes no odds how many other debts Grant owed; it makes no odds how many of his creditors he preferred. It makes no odds how many goods he sold to other creditors to pay their respective debts, nor the effect these sales may have had in defeating the payment of other creditors, nor the great amount of goods he had and was buying, if the jury believe from the evidence that he owed the debt to W. F. Vandiver & Co., and paid it by a sale of goods not greatly disproportionate in value to the amount of the debt, and reserved no interest in the goods sold to W. F. Vandiver & Co., then the jury will find for the claimants, W. F. Vandiver & Co., though these plaintiffs may never realize anything upon their claims." (7.) "The jury, in deciding whether the goods taken by W. F. Vandiver Co. from J. B. Grant, in satisfaction of the debt alleged to be due from Grant to W. F. Vandiver & Co., were worth more than the amount of the alleged debt, must take into consideration the condition the goods were at the time they were so taken, and if the jury find from the evidence that the goods were shop-worn, or were injured in the usual course of legitimate trade, the jury must take that fact into consideration, in arriving at the actual value of the goods so taken."

There was judgment for the claimants. The plaintiffs in attachment prosecute the present appeal, and assign as error the rulings of the trial court in refusing to give the charges requested by the plaintiffs, and in giving the charges requested by the claimant.

GEORGE W. PEACH, for appellants.

No counsel marked for appellee.

COLEMAN, J.—This action was for the trial of the right of property between Bates, Kingsberry & Co., as attaching creditors of J. B. Grant, and W. F. Vandiver & Co., claimants. All the assignments of errors arise upon

charges given and charges refused, by the trial court. No new questions are involved.

No principle of law is better settled by the adjudications of this court, than that an insolvent debtor may by a sale of goods, in payment of a pre-existing debt, prefer one or more of his creditors to other creditors. The conditions upon which such preference is upheld are, that the *bona fides* of the debt, must be established, that the goods accepted and received in payment of the debt, were taken at a fair and adequate consideration, and that no benefit was reserved or contracted for in behalf of the debtor. Where these conditions exist there is no room for fraud. The fact that the parties knew the effect of the transaction would be, to prevent the other creditors from collecting their debts does not affect the validity of such a transaction. The reasons for these conclusions have been given in many decisions. We will not repeat them.—See *Pollock v. Meyer*, 96 Ala. 172, where the decisions are collected and cited.

All the charges given for claimant, framed in different language to meet the varying phases of the evidence, assert the principle declared above. Those requested by the plaintiffs assert a contrary conclusion, and were properly refused.

There is no error in the record.

Affirmed