# First National Bank of Birmingham *v.* Smith.

*Bill in Equity by Creditor to set aside Conveyance as Fraudulent.*

1. *Conveyance by insolvent debtor to creditor; validity as against other creditors.*—The principle is settled by repeated decisions of this court, that an insolvent debtor may pay one or more of his creditors in full, though he thereby disables himself to pay the others; and the validity of the transaction, when assailed by other creditors, is not affected by the debtor's motive or intention, nor by the grantee's knowledge of the fact of insolvency and the necessary effect of the transaction, but is dependent on these conditions: (1) the debt must be *bona fide* and enforceable, not simulated; (2) the payment must be absolute, and, if made in property, it must not be materially in excess of the debt; (3) no pecuniary benefit, or consideration of value, other than the liquidation of the debt, must enure or be secured to the debtor; and (4) when the transaction is between near relations, stricter proof is required than when it is between strangers.

4

2. *Same; simulated indebtedness; transactions between husband and wife.*—Ordinarily, a simulated increase of the actual indebtedness, by including fictitious debits, or omitting proper credits, will avoid the transaction; but where, as in this case, the conveyance is by the husband to the wife, and the evidence shows that the value of the property was not greater than the actual indebtedness,though each was less than recited, the transaction will not be declared void because, in making a statement of the accounts for settlement, the husband wrongfully charged himself with interest on his wife's moneys which he had received; nor because he failed to credit himself with taxes paid on his wife's lands during those years, when the debt of the attacking creditors was not in existence.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 21st of August, 1889, by the First National Bank of Birmingham, as a creditor of W. A. Smith, against said Smith and his wife ; and sought to set aside, on the ground of fraud, a conveyance of certain real estate in Birmingham executed by said Smith to his wife. The conveyance assailed by the bill was dated November 25th, 1887, and recited as its consideration an indebtedness of $21,149, full payment and satisfaction of which was acknowledged. The bill alleged that Smith was insolvent at the date of this conveyance, that it conveyed substantially all of his property, and that the recited consideration was fictitious and simulated. On final hearing on pleadings and proof, the City Court dismissed the bill, and its decree is here assigned as error.

GILLESPY & SMYER, for appellant.

R. H. PEARSON, and WEBB & TILLMAN, *contra.*

STONE, C. J.—The principles of law material to be considered and declared in this case have been so often decided in this court, that we consider it unnecessary to do more than state them. They grow necessarily out of our legislation, which permits an insolvent debtor—one who is not able to pay all his debts in full—to prefer and pay one or more creditors, to the utter neglect and detriment of the others. Perhaps our system is an unwise one, but, if so, the legislature alone can remedy it. We must administer it as it is. The principles applicable to this case may be thus summarized : An insolvent debtor may select which of his creditors, one or more, he will pay, and pay them in full, and thus disable himself to pay the others anything; and it makes no difference if the one or more preferred creditors know the effect of the transaction will be to deprive the debtor of all means with

which to pay his other debts. Nor is the wish, motive, or intention of the debtor a material inquiry, if the requisite conditions exist. Those conditions, in a case like the present, are: First, the debt must be *bona fide*, and enforceable, not simulated. Second, the payment must be absolute, and if made in property must not be materially in excess of the debt. Third, no pecuniary benefit, or consideration of value, other than the liquidation of the debt, must enure, or be secured to the debtor. Fourth, stricter proof is exacted, when the transaction is between near relations.—*Crawford v. Kirksey*, 55 Ala. 282; *Hodges v. Coleman*, 76 Ala. 403; *Dollins v. Pollock*, 89 Ala. 351, and authorities on p. 362; *Chipman v. Stern, Ib.* 207; *Mobile Savings Bank v. McDonnell, Ib.* 434; *McDermott v. Eborn*, 90 Ala. 258; *Benedict v. Renfro*, 75 Ala. 121; *Hubbard v. Allen,* 59 Ala. 283; *Hamilton v. Blackwell*, 60 Ala. 545; *Lipscomb v. McClellan*, 72 Ala. 151; *Tryon v. Flournoy*, 80 Ala. 321.

As we interpret the testimony, and excluding all interest on the indebtedness from W. A. Smith to his wife, we fix that indebtedness, at the lowest estimate, at a sum in excess of fourteen thousand dollars. In this estimate we allow to the husband all credits of which the testimony furnishes the *data*. True, we have not attempted to approximate the amount of taxes paid by him for her during the years from 1881 to 1887. We could not do so, *first*, because the proof furnishes us no guide; *second*, it is not shown that the debt to the First National Bank was in existence at that time, and Smith testifies that he made no charge against his wife on that account. This he might well do, alike in law and in morals. After allowing him all proper payments which the testimony tends to show he made for her, he still held of her moneys five thousand dollars, or more, upon which, as we have seen, he was chargeable with no interest. Possibly he felt it his duty or privilege to pay her taxes on this account. It is certain that no one who was not at that time a creditor of his, could complain of such payment, even if a creditor could. This we need not and do not decide. The complainant has shown no facts which authorize us to abate Smith's debt to his wife on account of the taxes paid for her.

The transfer of the property from Smith to his wife was made in November, 1887. The property consisted of lots in Birmingham. Preparatory to the settlement, he stated an account between himself and his wife, by which he made himself her debtor in over twenty-one thousand dollars. In reaching this result, he allowed himself credit for moneys paid for his wife amounting to thirty-five hundred dollars.

[First National Bank of Birmingham v. Smith.]

This was a part of the ten thousand dollars of her money which the testimony shows he had received in the two checks of her father. He charged himself with some forty-six hundred dollars of interest, which we have shown was improper. This item of interest entered into the estimated indebtedness of twenty-one thousand dollars, and increased it by that amount. Eliminating the charge for interest, the account of indebtedness would show a balance against him of over sixteen thousand dollars. Now, in settling this estimated indebtedness of twenty-one thousand dollars from Smith to his wife, it was agreed that she receive the lots conveyed in full payment of the debt due her, and she thereupon receipted the account. That account, the original as receipted, was made an exhibit to Mrs. Smith's answer, and is in the record. This receipted account was the consideration of Smith's deed conveying the lots.

It is contended for appellant that this was a simulated indebtedness of four thousand six hundred dollars, and renders the transaction fraudulent. Ordinarily, if the debt attempted to be paid be increased as here shown, the effect would be to avoid the sale. The conduct of the parties in this case, however, repels the idea that this was secretly done, and, if necessary, we incline to the opinion it was done through ignorance. We place our ruling on another principle. The true inquiry, at last, was and is, did the creditor bargain for, and receive over-payment, or payment plainly in excess of his just demand? Neither Smith nor his wife testified that the property conveyed was worth twenty-one thousand dollars. They expressed the belief it would not sell for that price. Three expert witnesses, dealers in real estate, were examined. The highest market price fixed places the aggregate value of the lots at less than we have ascertained Smith owed his wife, while the other witnesses fix the market value at much less than this one does. No witnesses were examined in opposition to this testimony. We think the testimony shows that Mrs. Smith was a *bona fide* creditor, at least for over fourteen thousand dollars, and that she has not been overpaid.

There is nothing shown which amounts to fraud in law, and the decree of the Chancellor must be affirmed.