# Pollock v. Meyer.

*Bill in Equity to set aside Fraudulent Conveyance.*

1. *Conveyance of property by insolvent debtor in payment of pre-existing debt; validity of, as against other creditors.*—If the property conveyed by an insolvent debtor in payment of pre-existing debts does not materially exceed in value the amount of indebtedness actually owing, and paid by the conveyance, and no benefit is reserved to the grantor, the conveyance is lawful, as against his other creditors, regardless of the motives of the parties to the conveyance, or of badges of fraud in the transaction.

1. *Same; release of debtor from his contingent liability as indorser.*—The release of the debtor from his contingent liability as indorser of the notes of other persons constitutes a valuable consideration, and the value of such release may be included in determining the amount of indebtedness paid.

APPEAL from the City Court of Selma.

Heard before the Hon. WM. H. TAYLOE, Special Judge.

The bill in this case was filed May 2, 1889, by Jacob Pollock and Leopold Lowenstein, partners in business under the firm name of J. Pollock & Co., and several other

Vol. 96.

persons, all claiming to be creditors of M. Meyer & Co. who, prior to November 27th, 1888, were engaged in a large mercantile business in the city of Selma. The object of the bill was to have set aside, as in fraud of the rights of the creditors of M. Meyer & Co., three conveyances executed by them on November 27, 1888. The conveyances which were attacked as fraudulent were: (1.) A bill of sale or transfer to Jacob Rothchild, as trustee, of the stock of goods of M. Meyer & Co. and the unexpired lease on the stores occupied by them, in payment and discharge of debts recited to be due to the Commercial Bank of Selma and to Emilie Meyer, stated in the instrument to amount in the aggregate to the sum of $60,503 07–100. The debt to Emilie Meyer was stated to be $16,216 65–100. The debt to the bank was described as composed of $6,500.00 due on notes made by Meyer & Co. alone, designated "straight paper," $27,535 20–100 due from Meyer & Co. as principal debtors, but represented by paper upon which other persons were also liable, as endorsers, &c., and $7,096 72–100 due upon paper endorsed by Meyer & Co. The instrument stated that the appraised value of the property transferred was $63,981.00. (2.) transfer of their book accounts, bills, notes, &c., in payment of certain other debts. (3.) A conveyance of certain land to Albert Meyer, in payment of an indebtedness recited to be due to him. The bill contained allegations to the effect that the several debts recited in the three instruments were simulated, in whole or in part, and that the property conveyed in payment thereof greatly exceeded in value the amounts of the debts really due. The defendants answered the bill, denying the allegations charging fraud.

The several transfers and conveyances were accepted by the beneficiaries in payment and discharge of the recited debts. The principal contention in the case was in reference to the transfer first above mentioned. As to the item of $7,096.72–100 due upon notes, etc., endorsed by Meyer & Co., the complainants insisted that a benefit was reserved to Meyer & Co., in that they would be entitled, upon the payment of the notes by them, to hold the notes and enforce payment thereof by the makers. The instrument of transfer, in providing for the application of the proceeds of the sale of the stock of goods, &c., directs, "the payment to said bank of said sum of $7,096.72–100 . . . or such part thereof as shall remain unpaid by the other obligors thereon." That instrument also provided: "Should there remain any surplus of goods or proceeds, they shall enure

to and belong to the said parties of the third [the bank] and fourth [Emilie Meyer] parts in proportion to the amounts of the indebtedness of said M. Meyer & Co. to them respectively, as hereinbefore set forth."

After the representatives of some of the complainants had been in Selma, investigating the transactions which the bill in this case attacks as fraudulent, the Commercial Bank of Selma and Emilie Meyer, on December 3, 1888, filed a bill for the appointment of a receiver of the property transferred to Jacob Rothchild, as trustee for them. They alleged in their bill that Rothchild had made sales from the stock of goods but had not accounted for all the proceeds, that he had failed to deposit in the Commercial Bank, at the close of each day, the proceeds of that day's sales, as provided in the trust instrument, and failed and refused to do so after demand; that he gave no bond and refused to give bond, and that he had no property above what he could claim as exempt. Rothchild, who had been a bookkeeper for M. Meyer & Co., answered this bill on the same day, admitting its allegations. And a receiver was appointed on the same day. On the next day, December 4, 1888, a bill was filed for the appointment of a receiver of the notes, book accounts, &c., which had been transferred to said Rothchild, as trustee, to pay certain other debts of M. Meyer & Co.; and a receiver of that property was appointed.

DAVID T. BLAKEY and TOMPKINS & TROY, for appellants.

THOMAS B. ROY, PETTUS & PETTUS, and WHITE & CRAIG, contra.

COLEMAN, J.—Plaintiffs as creditors of M. Meyer & Co. filed their bill for the purpose of having certain conveyances executed by the defendants to other creditors set aside and annulled, as being fraudulent and void, and to have the property conveyed subjected to the payment of their demands. The bill does not seek to have the several conveyances assailed, declared a general assignment for the benefit of all the creditors, but proceeds entirely upon the theory that the several conveyances were fraudulent and void.

The *gravamen* of the charges is, that the debts in payment of which the conveyances were made, were simulated in whole or in part, and also that a benefit was reserved to the grantors. The record is voluminous, and large amounts are involved in the litigation. There is no material conflict in the evidence, that we have discovered, and no new prin-

[Pollock v. Meyer.]

ciple of law invoked on either side. The real contest is over the legal effect of proven facts upon the transaction, and we think this is narrowed down to the conveyances to Rothschild, trustee for the Commercial Bank and Emilie Meyer, wife of respondent M. Meyer.

In *Knowles v. Street*, 87 Ala. 360, it is said : "Since the decision in *Hodges v. Coleman*, 76 Ala. 103, which has been uniformly followed, it should be regarded as settled law in this State that the sale of the whole or a part of his property by an embarrassed or insolvent debtor to his creditor in payment of an antecedent debt, will be upheld, if the debt be *bona fide*, its amount not materially less than the fair and reasonable value of the property, and the payment of the debt is the sole consideration, and no use or benefit is reserved to the debtor. In such case the enquiry should be directed to the *bona fides* of the debt, the sufficiency of the consideration, and the reservation of a benefit to the debtor. If the transaction is not assailable on some one of these grounds, fraud otherwise has no room for operation. Whether there exist the ordinary badges of fraud, whether the debtor intended to hinder or defraud his other creditors, whether the purchasing creditor was swift in the race of diligence for the purpose of defeating other creditors who were pressing their demands, or whether such is the necessary consequence, are not material enquiries. By devoting his property to the payment of an honest debt, the debtor merely performs a lawful act."

In *Meyer & Co. v. Sulzbacher*, 76 Ala. 128, it is said : "The sale of the goods being shown to be in absolute payment of a debt, proved to be due by Sulzbacher to his wife, and the price paid being fair and adequate; and no interest being reserved by the grantor, the preferance is one authorized by law, and the fraudulent intent of one or *both parties*, would not vitiate the transaction, because the act itself of preference being legal, fraud without damage would give no right of action." To the same effect is the case of *Carter v. Coleman*, 84 Ala. 268. In the *First Nat. Bank of Birmingham v. Smith et al.*, 93 Ala. 97, is said : "An insolvent debtor may select which of his creditors, one or more, he will pay and pay them in full, and thus disable himself to pay the others anything; and it makes no difference if the one or more preferred creditors know the effect of the transaction will be to deprive the debtor of all means with which to pay his other debts. Nor is the wish, motive, or intention of the debtor a material inquiry, if the requisite conditions exist. Those conditions, in a case like the present, are :

*First,* The debt must be *bona fide* and enforceable, not simulated ; *second,* the payment must be absolute, and, if made in property, must not be materially in excess of the debt; *third,* no pecuniary benefit or consideration of value, other than the liquidation of the debt, must inure or be secured to the debtor. . . . *The true enquiry at last is, did the creditor bargain for and receive over-payment, or payment in excess of his just demand.*" We italicize the last proposition.

In the case of *Harmon v. McRae,* 91 Ala. 401, Harmon Bros. sold a stock of goods to Jno. F. Harmon, the consideration being the assumption by Jno. F. Harmon of a debt due Lehman, Durr & Co. by Harmon Bros., and for which Jno. F. Harmon was bound as surety. There was evidence tending to show that Jno. F. Harmon supposed the debt he assumed to pay to be less than the value of the stock of goods. The facts proven, however, disclosed that the debt due Lehman, Durr & Co. far exceeded the value of the goods. It was held, that the fact that Jno. F. Harmon may have supposed at the time of the purchase that he was getting the goods for a less price than their real value did not vitiate the transaction.

The principle of law settled by the decisions of this court is, that the payment of an antecedent debt by an insolvent debtor, by a conveyance of his property, rests upon entirely different grounds, than when a cash or present consideration is paid. It matters not whether the grantor alone, or grantor and grantee both, devised and intended to get the advantage of other creditors, if in fact the effect of the transaction was solely to pay a debt honestly due, and the property was received by the creditor in payment of his debt at a fair and adequate price, and no interest or benefit reserved to the grantor debtor. "If the transaction is not assailable on one of these grounds, fraud has no room for operation." As was said in *Hodges v. Coleman, supra*: "What injury can the motive do to a non-preferred creditor ? The act we have seen is lawful. Can human tribunals set aside a transaction lawful in itself because the actors had an evil mind in doing it ? Can there be fraud in doing a lawful act, even though it be prompted by an evil malice or badges of fraud?"

Let us apply these principles to the facts of the case. It is indisputably proven that M. Meyer & Co. were indebted to the bank:

[Pollock v. Meyer.]

On straight paper,...........................$  6,500.00
As principal debtors on sundry notes,........$27,635.00
To Emilie Meyer (conceded),..................$14,000.00

Total,.......................................$48,135.00
The evidence shows the actual gross proceeds of
the goods was,...............................$40,719.00
Leaving a deficit of,........................$7,416.00

It is argued that the appraisement by the parties of the goods fixes their value at a much greater amount, and this taken in connection with other circumstances, shows that the parties intended to hinder or defraud their creditors. Concede it for the argument. What then is the true enquiry? It is whether there has been an overpayment. If by the testimony it is satisfactorily established that at a fair valuation the goods were not in excess of the *bona fide* indebtedness paid by the conveyance, and no benefit reserved to the grantor, there is no room for fraud.

The argument based upon what is denominated "endorsed paper" can not be maintained. This paper was the property of the bank received in the usual course of business. The liability of M. Meyer & Co. was that of endorsers. As a part of the consideration of the conveyance of the goods, M. Meyer & Co. were released from their contingent liability as such endorsers. To be released from such liability constituted a valuable consideration. Its actual value in this case seems to have been over two thousand, as the bank has been unable to realize by this sum, the amount of indebtedness evidenced by the endorsed paper, and for which deficit, without their release, M. Meyer & Co. would be liable as endorsers. They certainly can have no interest in the endorsed paper. We have shown above that, without reference to the endorsed paper, the other indebtedness is greatly in excess of the entire value of the goods conveyed. We would not be understood as being convinced by the evidence, that the debts or any part of them charged to have been simulated, were in fact not *bona fide*, or that the proceedings in the courts for the appointment and removal of the various receivers were evidence or badges of fraud. We place our conclusion on the broad proposition deduced from the authorities, that whatever may have been the motive of the parties, or the badges of fraud connected with the proceedings, the proof established conclusively, that the *bona fide* debts, those which were actually due and which the debtor had the right to pay by a conveyance of his

12–96.

property, were largely in excess of the real value of the property assigned and transferred in payment and discharge of them. That after a fair and *bona fide* application of all the property conveyed and money realized, there yet remains a large deficit. That from this deficit the grantor, by the terms of the conveyance, stands discharged. That no benefit or interest was reserved to the grantor on the face of the conveyance, and the proof shows that none was intended to be reserved for him, and that he can not possibly realize any benefit out of the property or its proceeds, assigned and transferred in payment and discharge of his indebtedness. Where all these conditions exist in the transactions, there is no room for fraud available to a non-preferred creditor of the grantor.

Affirmed.