# Bates v. Morris.

### *Statutory Claim Suit.*

1. *Conveyance attacked as fraudulent; relevant evidence.*—On an issue formed *questioning* the *bona fides* of a transfer of property, in payment of an alleged indebtedness, if the debt is established as real, the pivotal question is whether there was such disparity between the value of the property transferred and the amount of the debt as to be indicative of fraud; and in determining this question, the evidence of the market value of the transferred property is relevant and admissible.

2. *General objections to evidence.*—When there are only general objections to evidence, without specifying the particulars in which it is objectionable, such objections are properly overruled, unless the evidence is plainly illegal or irrelevant.

3. *Failure to introduce witness; does not justify an unfavorable inference.*—Where a person, whose evidence would be competent for either party in an action, was in court during the trial and equally accessible to both parties, it is error to charge the jury that they could draw an unfavorable inference against one of the parties for failing to call such person as a witness; and this is true notwithstanding the witness referred to was the husband and grantor of the claimant in a claim suit, where the transfer from him is attacked as fraudulent.

4. *Earnings of wife; separate estate therein.*—Prior to the act approved February 28, 1887, by which the earnings of the wife were made her separate estate, the husband could, by contract, gift or renunciation of all right to them, invest the wife with a separate estate therein; and while such voluntary gift or renunciation is not valid as against the husband's existing creditors, it is valid as to subsequent creditors, unless shown to have been infected with actual fraud.

APPEAL from Birmingham City Court.

Tried before the Hon. H. A. SHARPE.

On February 18, 1887, W. E. Bates became indebted to Mary Morris; and on his failure to pay said indebtedness, she brought suit against him and obtained judgment thereon in the sum of $100, on April 26, 1890. Execution having been returned "no property found," garnishment was issued on the judgment on July 21, 1891, and served on St. Pierre Bros. In their answer the garnishees acknowledged indebtedness to W. E. Bates, but suggested that the money in their hands was claimed as

the property of Cora Bates. After having been duly served with notice, Cora Bates interposed a claim to the money in the hands of the garnishees. She based her claim upon the following facts, which her testimony tended to show : Prior to 1887 the claimant earned certain money by her own labor, and, with the husband's consent, was allowed to have and enjoy the proceeds thereof. This money, together with other money which she obtained from her brother, amounting in the aggregate to $3,500, she loaned to her husband, W. E. Bates, the defendant in the original suit. On February 25, 1889, her husband, W. E. Bates, being unable to pay her the money borrowed, and being, as she testified, an intemperate and improvident man, at her solicitation he conveyed to her in satisfaction of said indebtedness, his undivided one-half interest in the leasehold interest and rights to certain premises, which had been rented to St. Pierre Bros., the garnishees. There was also testimony for the claimant that the debt was the full value of her husband's interest in the leasehold estate. There was testimony for plaintiff tending to show that the property interest conveyed exceeded in value the amount of the indebtedness. The claimant was in actual possession of the premises rented and occupied by garnishees from said 25th day of February, 1889, down to the time of this litigation, and had collected the rent for the same. It was shown that the said lease had yet to run a little more than 7 years from the date of the trial. There was also evidence introduced for the plaintiff in the original suit tending to show that at the time of making the deed to his wife of the leasehold interest, W. E. Bates was insolvent ; but this fact was not shown to have been known by his wife. The plaintiff in the original suit introduced one Miles, who, after having testified that he was acquainted with the market value of real estate in Birmingham when the conveyance was made to claimant by W. E. Bates, was asked this question : "What, on February 25th, 1889, was the market value of the leasehold interest in the premises, made and referred to by the witnesses as belonging to the claimant, running nine years and bringing in a rental of $1,424 net, for half interest, with buildings belonging to lessee at termination of lease?" The claimant objected to this question, and duly excepted to the court overruling her ob-

jection.   Upon the witness answering $12,000, the claim-
ant objected to the answer, and duly excepted to the
court overruling her objection.   The claimant assigned
no special grounds of objection to this evidence.   W. E.
Bates, the husband of the claimant, and the defendant in
the original suit, was present during the trial of the
cause, but was not called as a witness by either par-
ty and did not testify.

Upon the introduction of all the evidence, the claim-
ant requested the court to give, among others, the fol-
lowing written charges :   (5.)   "The court charges the
jury that the mere fact that claimant failed to introduce
her husband as a witness in this case is not to be consid-
ered by the jury as a circumstance against her, but it is
a circumstance that can be considered by the jury for or
against her as they may see fit under all the evidence in
the case."   (7.)   "Even if the jury believe from the ev-
idence that in making the conveyance to his wife, which
was introduced and read to the jury, W. E. Bates in-
tended to defraud his creditors this would not affect the
claimant to the property so conveyed, unless she partici-
pated in the fraud."   The court refused to give each of
these charges, and the claimant duly excepted.   The
court at the request of the plaintiff, gave the following
written charges to the jury, and the claimant separately
excepted to the giving of each of them :   (1.)   "The jury
are charged that, before the plaintiff can be defeated in
this action, the claimant must show that the transaction
between the claimant and her husband, namely, the
conveyance made by him to her of the property in con-
troversy, was for a fair and valuable consideration, and
that in determining whether such transaction was fair
and just, they can look to the fact that W. E. Bates was
not examined as a witness in this trial."   (2.)   "I charge
you, gentlemen of the jury, that if you believe from the
evidence that the transfer of the property in controversy,
made by W. E. Bates to his wife (the claimant) was
made for the purpose of hindering, delaying or defraud-
ing the creditors of W. E. Bates, you must find for the
plaintiff."   (3.)   "I charge you, gentlemen of the jury,
that prior to February 28, 1887, the incomes or profits of
the wife's estate or property, and the earnings of the
wife belonged to the husband and not to the wife."

There was judgment for the plaintiff.   Claimant brings

[Bates v. Morris.]

this appeal, and assigns as error the ruling of the court in admitting in evidence the testimony of the witness Miles, and giving and refusing the respective charges asked.

LANE & WHITE for appellant.—Charge 1 given at the request of the plaintiff was erroneous, while charge 5 asked by the plaintiff should have been given.—*Pollak v. Harmon,* 94 Ala. 420, 10 So. Rep. 156 ; *Roney v. Moss,* 74 Ala. 393 ; *Catlin v. Gilders,* 3 Ala. 545. The conveyance of Mr. W. E. Bates to the claimant was in settlement of a *bona fide* debt, and at a fair valuation, and the transaction was legal, and should be upheld by the court. *Hornthall v. Schonfeld,* 79 Ala. 107 ; *Hodges v. Coleman,* 76 Ala. 105. The earnings of the claimant, by the husband's consent, became her separate estate, and he, becoming indebted to her for such earnings and other money loaned him by her, had the right to transfer a leasehold interest, in payment of such debt, and such transfer was valid as to all subsequent creditors.—*Pinkston v. McLemore,* 31 Ala. 311 ; *Peterson v. Mulford,* 36 N. J. Law, 481.

GREGG & THORNTON, *contra.*

STONE, C. J.—The issue formed between the parties questioned the *bona fides,* as to the creditors of the husband of the appellant, of the transfer he had made to her of his right and interest in the lease executed to him and Beasley by James Wilson and Minnie Constantine. The transfer purports to have been made in consideration, and for the payment of an antecedent indebtedness of the husband. If the debt was real, the pivotal inquiry was whether there was such disparity between its amount and the value of the leasehold interest, as to be indicative of fraud ; whether the appellant had bargained for and received over-payment, or payment in excess of her just demand.—*First National Bank v. Smith,* 93 Ala. 97, 9 So. Rep. 548 ; *Pollock v. Meyer,* 96 Ala. 172, 11 So. Rep. 385. To this inquiry, the evidence of the witness Miles was directed, and we do not perceive that it is subject to any just objection. If the question eliciting the evidence was in form objectionable, or, if its hypothesis was, as is here insisted, broader than the evidence

to which it refers, this was matter of special objection, which, if it had been made, would have been removed. The objection to the question, and to the evidence was general and indefinite. Such objections are not favored, and if the evidence is not plainly illegal or irrelevant, the trial court commits no error in overruling them.— *Wallis v. Rhea,* 10 Ala. 453 ; *Sanders v. Knox,* 57 Ala. 81 ; Rule of Practice, 90 Ala. p. IX.

The first instruction given to the jury at the request of the appellee is not very clearly expressed. As we construe it, as matter of law, it asserts, that the failure to examine the husband as a witness, should be regarded as a fact or circumstance tending to the proof or disproof of the matter in dispute. It may be, that it was intended to assert no more than that the failure to examine the husband was matter of inference or presumption unfavorable to the appellant, in weighing the other evidence. In either point of view, we deem the instruction erroneous. The husband was in court, accessible to either party, and a competent witness to the same extent for the one party, as for the other ; and it is difficult to assign any just reason for imputing the failure to examine him as a witness, as matter of evidential inference, or as ground of unfavorable presumption for or against the one party, which would not apply to the other. To neither can be imputed the withholding or suppression of evidence ; and all that can be properly said is, that neither deemed it necessary to add the evidence of the husband touching the matter in dispute. The question was considered in *Scovill v. Baldwin,* 27 Conn. 316, and it was said by the court: "The circumstance that a particular person, who is equally within the control of both parties, is not called as a witness, is too often made the subject of comment before the jury. Such a fact lays no ground for any presumption against either party. If the witness would aid either party, such party would probably produce him. As he is not produced, the jury have no right to presume anything in respect to his knowledge of any facts in the case, because they are to try the case upon the facts shown in the evidence, and upon them alone, without attempting to guess at what might be shown, if particular persons were produced by the parties." Cases arise in which material facts lie exclusively within the knowledge of a particular

[Bates v. Morris.]

person. If such person is accessible, and is not produced and examined, the party claiming benefit from the facts must generally fail from a want of evidence. And cases may present themselves in which a person having peculiar knowledge of facts, from which a party claiming to derive benefit, is accessible to such party, and not to his adversary. If such person is not produced and examined, a presumption may arise that the facts do not exist.—Lawson on Presumptive Ev., 120, *et seq*. Such presumption is, however, indulged with great caution, and only when it is manifest the evidence is within the power of the one party, and is not accessible to his adversary. The husband was a party to the transaction impeached, and it may be, the principal actor in it, of necessity having full knowledge of all the facts attending it. The appellant was the other party, having equal knowledge, and was examined. There is no room for any inference that she had omitted the statement of any material fact to which the husband would have testified; or, that his evidence would not have been merely cumulative, corroboratory of the evidence she had given. If it was supposed there was any fact within his knowledge of which there was not evidence; or that so far from corroborating he would, in any respect, have contradicted the evidence of the appellant, in support of the transaction, the appellee ought to have examined him. Not having examined him, there is no room for any conjecture or speculation as to the character of the evidence he might have given; nor any just reason for unfavorable inference against the appellant. If she had called the husband, and he had corroborated the evidence in support of the transaction, his credibility would have been assailed because of his relation to the appellant and to the transaction. This being true, the appellant ought not to suffer by reason of the failure to examine the husband. Similar instructions have been considered and repudiated by this court.—*Patton v. Rambo*, 20 Ala. 485; *Jackson v. State*, 77 Ala. 18; *Carter v. Chambers*, 79 Ala. 223; *Pollak v. Harmon*, 94 Ala. 420, 10 So. Rep. 156. The last case cited is not in any respect distinguishable from the present one, and the instruction requested and refused differs from the instruction we are considering, only in being more clearly expressed. It was said by CLOPTON, J., citing the case of *Scovill v. Baldwin, supra;*

"Both the grantors in the bill of sale were in court, and equally in the control of both parties. In such case, the jury, being in duty bound to determine the case on the facts shown and the evidence actually introduced, have no right to presume what would have been shown, had the grantors in the bill of sale been examined as witnesses."

It is not necessary to notice separately and particularly, the instructions given or refused, the subject of the remaining assignments of error. The controversy between the parties involved only plain, well settled principles of law. Prior to the act of 28th of February, 1887, the earnings of the wife were not her separate property. The common law prevailed, and her earnings belonged to the husband. By contract with her, or by gift, or by renunciation of all right to them, suffering her to retain them, the husband could invest the wife with a separate estate in such earnings which a court equity would protect. But such gift, or such voluntary renunciation, the equivalent of a gift, was not valid as against the existing creditors of the husband, for the same reason that any voluntary conveyance would be void as to the existing creditors of the donor. · As to subsequent creditors, such a gift or renunciation was valid, unless it was successfully assailed for intentional fraud.—*Pinkston v. McLemore*, 31 Ala. 308; *Wing v. Roswald*, 74 Ala. 346. The evidence of such gift or renunciation, must have been clear, and it must have been apparent that the husband intended to divest himself of the right to her earnings, and to set them apart to the separate use of the wife.— *Carleton v. Rivers*, 54 Ala. 467. If it be shown that the husband gave or renounced to the appellant her personal earnings, and that by her thrift and industry she acquired moneys, which were loaned to, or used by the husband, by the loan or use he became indebted to the appellant, and the debt would form a valuable consideration for the sale or conveyance of property to her. If at the time of such gift or renunciation, the debt of the husband to the appellee had not been created, as to her the gift or renunciation is valid, unless it is shown to have been infected with actual fraud.—*Huggins v. Perrine*, 30 Ala. 396. But although it may appear that the appellee was a subseqent creditor of the husband, if her claim existed at the time of the transfer of the leasehold interest to the

appellant, the transfer can not be supported, if it be shown that the value of the interest transferred was so materially in excess of the amount of the indebtedness of the husband, that the legitimate boundary of securing payment of the debt was passed, and there was intentional bargaining for and receiving over-payment.—*Pollock v. Meyer*, 96 Ala. 172. 11 So. Rep. 335, and authorities cited. An observance of these well settled principles will lead to a proper determination of the controversy and of the right of the parties.

Reversed and remanded.