# Wood & Son, *et al. v.* Riley.

*Bill in Equity to Declare Conveyance Fraudulent.*

1. *Burden of proof; when on grantee; when on wife; close scrutiny required as to acts of relatives.*—The bill alleged that complainants were judgment creditors of William Wood and Son; that while they were proceeding with the suits in which their judgments were rendered, the defendants, William Wood & Son, who were insolvent, made, or caused to be made, fraudulent conveyances to the several persons who are made parties to the bill; that of these parties one was the wife of William Wood, who held two conveyances, and the others, except one, were near relatives; that there was no. consideration paid for the property conveyed; that the said William Wood furnished the consideration for the property conveyed to the wife. The defendants answered, denying the charge of fraud, and all of them respectively, except Hannah Wood, claiming that William Wood made conveyance to them to pay an antecedent debt. Hannah Wood alleged that the money belonged to her which was paid for the property conveyed to her. *Held,* that as to all of the conveyances, under the allegations of the bill and the averments of the answers of each of the respondents, except perhaps. the conveyances to Hannah Wood, the burden of proof was on the respondents to show a valuable and adequate consideration; that stricter and clearer proof is required when the wife or other relative is the grantee; and that where the conveyance is executed to the wife by a third person át the instance of the husband,

the onus is on her to clearly and fully prove that she paid for the property with her separate funds.

2. *Conveyance by insolvent debtor to pay antecedent presumed to be unfair.*—When conveyances by an insolvent debtor are made to pay an antecedent debt claimed by the grantee against him, this fact raises a presumption of unfairness and *mala fides*, and casts upon the debtor, as between him and creditors who attack the conveyance for fraud, the onus of showing that the sale was fair and made in good faith.

APPEAL from the Chancery Court of Walker.
Heard before the Hon. THOMAS COBBS.
The facts in this case are stated in the opinion.

H. L. Wathington, for appellant, contended, that the deeds and mortgages executed by William Wood and wife to the several grantees were for indebtedness prior to the indebtedness of Wood and son to any of the appellees becoming due; that these claims of the grantees and mortgagees were valid and subsisting and *bona fide;* that they did not participate in any fraudulent intent even if such intent existed in the mind of wood; and that the evidence showed that Mrs. Wood paid the original purchase money for the land conveyed to her. The following cases are cited: *Curran & Co. v. Olmstead & Schewing,* 101 Ala. 692; *McGhee v. Importers and Traders' Bank,* 93 Ala. 192; *Seals v. Robinson,* 75 Ala. 371; *Pickett v. Pipkins,* 64 Ala. 520; *Pollock v. Mayer,* 96 Ala. 173; *Lathrop Hatten Land Co. v. Bessemer Savings Bank,* 96 Ala. 350; *Harris v. Russell,* 93 Ala. 59; *Nat. Bank of Republic v. Dickinson,* 18 So. Rep., 144; *Cooper v. Berney Nat, Bank,* 99 Ala. 119; *Howell v. Carden; Smith v. Collins,* 94 Ala. 394; *Heard v. Murray,* 103 Ala. 400.

APPLING & McGUIRE, *contra.*—The facts in this case cast the burden of proof on the defendants the conveyances to them are presumed to be fraudulent until the contrary appears by clear and consistent proof.—*Calhoun v. Harman,* 87 Ala. 277; *Scholl v. Weil,* 103 Ala. 411; *Caldwell v. Pollock,* 91 Ala. 353; *Moore v. Penn,* 95 Ala. 200; *Beaufort v. Sherman,* 95 Ala. 205; *Roberson v. Mosely,* 93 Ala. 70; *Gordon v. McElwane,* 82 Ala. 250;

*Sides v. Scharff,* 93 Ala. 106; *Bangs v. Edwards,* 88 Ala. 383; *Wedgeworth v. Wedgeworth,* 84 Ala. 274; *Moody v. Walker,* 89 Ala. 619; *Jeffrey v. McGough,* 83 Ala. 205; *Callahan v. Monroe,* 70 Ala. 271.

TYSON, J.—Appellees who were judgment creditors of William Wood & Son filed their bill against them and the other appellants seeking to have declared fraudulent certain conveyances held by some of the respondents to certain described property. It was averred in the bill that the said Wood & Son and the individual members composing it, were insolvent at the date of the filing of the bill, and had been for a long time prior thereto, and were insolvent when the various conveyances attacked were made. It was also shown by the bill that the indebtedness to the complainants existed at the date of the execution of the several conveyances; and that all the respondents were either members of the family of William Wood or near relatives except the respondent Roddam. The bill further shows that suits were commenced by the complainants against William Wood and his son upon their respective claims during the month of January, 1894, and obtained their judgments in the month of February, 1895, and during the pendency of these suits the conveyances to each of the respondents were executed except those held by Hanna Wood, wife of William Wood. All of the conveyances except those held by Hannah Wood, were made by William Wood directly to the respondents holding them. As to these the bill alleges there was no consideration paid by the respective respondents for the property conveyed, notwithstanding the recital therein of the payment of a certain sum of money. As to the two conveyances under which Hannah Wood claims title to certain property, from one Adeline Burton and husband, the bill alleges that her husband, William Wood, furnished the consideration which was paid to Mrs. Burton for the property and had the deeds made to his wife. Each of the respondents filed separate answers in which they denied there was any fraud, and all of them alleged in their answers, except Hannah Wood, that William Wood executed to each of them the conveyances to pay an antecedent debt which

he owed to the amount of the consideration recited in the conveyance. Hannah Wood in her answer alleges that as to the conveyance made to her of date December 16, 1892, by her son who had obtained the title from Mrs. Adeline Burton on the 4th day of November, 1892, she gave the money, to-wit, $150 to her son to make the purchase for her and by mistake the deed was made by Mrs. Burton to him and in order to correct this mistake her son executed the conveyance to her. She nowhere avers where she got the money that she sent by her son to Mrs. Burton.

As to the other conveyance from Mrs. Burton under which she held certain property, her answer alleges that her husband made the contract of purchase as her agent and that her money paid for the property, to-wit: the $350, the recited consideration of the deed. As to all of the conveyances under the allegations of the bill and the averments of the answers of each of the respondents, except perhaps the first conveyance to the respondent Hannah Wood, there can be no sort of doubt that the burden of proof was upon the respondents to establish a valuable and adequate consideration.—*Calhoun v. Hannon*, 87 Ala. 277; *Schall v. Weil & Sons*, 103 Ala. 411; *Caldwell v. Pallock*, 91 Ala. 353; *Moore, Marsh & Co. v. Penn & Co.*, 95 Ala. 200; *Buford, McLester & Co. v. Shannon*, 95 Ala. 205. And when the wife or other relative is the grantee in the conveyance stricter and clearer proof is required.—*Robinson v. Moseley*, 93 Ala. 70; *First National Bank v. Smith*, 93 Ala. 97; *Sides v. Scharff Bros.*, 93 Ala. 106; *Lammons v. Allen*, 88 Ala. 417; *Wedgworth v. Wedgworth*, 84 Ala. 274. And where the conveyance is executed to the wife by a third person, at the instance of the husband, the *onus* is upon her to clearly and fully prove that she paid for the property with her separate funds.—*Bangs, Bond & Co. v. Edwards*, 88 Ala. 382. When the conveyances by the insolvent debtor are made to pay an antecedent debt claimed by the grantee against him, this fact, raises a presumption of unfairness and *mala fides* and casts upon the debtor, as between him and creditors who attack the conveyance for fraud, the *onus* of showing that the sale was fair and made in good faith.—*Calhoun v. Hannon et al. supra.*

Did the respondents sustain this burden of proof? In *Robinson v. Moseley, supra,* it is said: ·"To lift such burden, affirmative averment of the facts relied on as constituting the consideration is essential as·convincing proof of their existence. The laboring oar was upon the defendant, not simply to deny the negative aver- ment, that there was no consideration, but to state the affirmative fact, that there was such consideration, in what it consisted and how it was paid; and to support these averments by evidence. Otherwise the answer does not apprise the complainant of the line of defense which will be resorted to, nor afford him that opportunity for preparation to meet it which is a leading purpose of all pleading, and which the complainant is always entitled to with respect to a matter of defense affirmative in char- acter, and relied on to defeat and overturn a *prima facie* case made by the bill and admissions of the answer. It is said by Mr. Daniel to be 'of great importance to the pleader, in preparing an answer, to bear in mind that, besides answering the plaintiff's case as made by the bill, he should state to the court upon the answer all the circumstances of which the defendant intends to avail himself by way of defense; for a defendant ought to ap- prise the plaintiff by his answer of the nature of the case he intends to set up and that too in a clear, ambiguous manner; and, in strictness, he cannot avail himself of any matter of defense, which is not stated in his answer, even though it should appear in evidence.' The answer must put in issue all the facts on which the defendant relies in bar of the relief sought by the bill and evidence cannot be adduced of facts outside of these issues."

Confining ourselves for the present to a consideration of all the conveyances except the first one acquired by Hannah Wood,·and the evidence offered· by each of·the respondents to prove the *bona fides* of· the transaction, without entering into a ·detailed discussion· of the vari- ance between the evidence offered and the averments· of the answers, a casual examination will show that the *allegata and probata* do not correspond. Indeed upon a fair consideration of the evidence there is not only a failure to establish the facts as alleged in the answers, and an utter failure to overcome the presumption of un-

fairness and *mala fides* of the transaction, but the conclusion can scarcely be resisted that the conveyances from William Wood to each of the respondents were without consideration and were made by him for the sole purpose of defeating the complainants in the collection of their debts, and accepted by them in furtherance of this purpose.

As to the conveyances under which Hannah Wood claimed, her evidence shows that the money which was paid by her son for her was gotten from William Wood, her husband, and that the $350 which she alleges in her answer was paid by her husband as her agent, was not paid to Mrs. Burton at all, but that her husband paid Mrs. Burton for the property conveyed by the deed to her in labor and building materials for her and she allowed him a credit of $350 on a debt he owed her. She testified that her husband prior to December, 1893, was indebted to her in the sum of $400 with nine years interest and $600 with eight years' interest. Her husband testified that prior to December, 1893, he was indebted to her for $400 borrowed from her in 1875 and $600 borrowed in 1885. She further testified that when she arrived in America from England, in 1866, she had about $500, which she had acquired from earnings by keeping boarders and doing other work while they lived in England and from the sale of some furniture when they left there. That soon after her arrival she purchased a lot in Cleveland, Ohio, and erected a house on it, which she sold in 1875 for $1,800, and came to Walker county, where $500 of this sum was invested in a farm and the loans were made to her husband out of the balance. No note or other obligation was shown by her to have been taken from her husband for either of the sums she says she loaned him. It is not shown by a clear statement that her husband ever recognized his liability to her for either of those sums or that she ever had any expectation of having it refunded to her until he became financially embarrassed by reason of the mercantile business which was conducted by his partner, who was his son. He was a carpenter and contractor by trade, and the mercantile business was only in existence a short time before the firm was in financial distress and its life was of short

duration. He does say in a vague and indefinite way that he made her some small payments at different times, but could not state what amount or amounts he had paid or name any dates upon which the payments were made. We have then as against existing creditors of the husband, a husband paying for his wife $450 to a third person for property which was conveyed directly to her, under an alleged indebtedness by him to her, a portion of which indebtedness was of eighteen years' standing and the remainder eight years past due. Independent of the question as to whether the $500 or the $1,800 originally belonged to the husband, as unquestionably it did at common law, unless he renounced his marital claim and assented to her retaining it as her separate property, we do not think after the lapse of so great a length of time and no attempt made by the wife to collect the money or even require a recognition by her alleged debtor of his liability, without which, *prima facie* it had long been barred by the statute of limitations, and other inferences unfavorable to the *bona fides* of the transaction deducible from the evidence, that it clearly appears that she had a *bona fide* and enforceable, not simulated, debt against her husband.—*Gordon v. McIlwain,* 82 Ala. 247; *Bray and Landrum v. Ely,* 105 Ala. 553; *Pollak v. Meyer,* 96 Ala. 172.

We find no error in the record. The decree of the chancellor is affirmed.

Affirmed.