# Wimberly, *et al.* v. Montgomery Fertilizer Company.

*Bill in Equity to Set Aside Fraudulent Conveyances.*

(Decided November 20, 1901.)

1. *Bill to set aside fraudulent conveyance; burden of proof.*—Where a bill is filed to set aside a conveyance as constructively fraudulent, the burden of proof is on the complainant to show that he was an existing creditor of the grantor at the time of the alleged conveyance.

2. *Same; when not multifarious.*—A bill is not multifarious which seeks to set aside several alleged fraudulent gifts or conveyances made to the same person, and to subject the property thus disposed of to the payment of complainant's debts against the grantor, where there is made to appear unity of fraudulent design to put the property beyond the reach of the creditors of the grantor.

3. *Same; what amendments proper.*—An amendment to a bill setting up an alternate ground of relief is always proper, when the matter of amendment might have been stated in the alternative in the bill as originally filed.

4. *Same; what amendments proper; misjoinder of causes of action.*—Where the original bill alleged that complainant's debtor, while complainant's debt was in existence, made a voluntary transfer, without consideration, of certain stock in a corporation to the debtor's wife, and that he later conveyed certain real estate to his brother, who thereafter conveyed it to the debtor's wife, both conveyances being voluntary and without consideration and void; and the bill was afterwards amended by alleging that, if complainant was mistaken in said averments, the debtor's wife had no means of her own, and that, if said stock was issued to her directly by the corporation or purchased by her from some other person, she paid therefore with her husband's money, which he had given to her without consideration; and that, if any money was paid by said wife to said brother for said real estate, it was the money of her husband given to her without consideration, and further alleging that said gifts and transfers were void and of no effect,—the bill as amended is not demurrable for multifariousness or for inconsistency or for misjoinder of causes of action.

[Wimberly, *et al.* v. Montgomery Fertilizer Company.]

5. *Conveyance to wife by third person, at instance of husband; when fraudulent.*—A conveyance or transfer made to a wife by a third person, at the instance of the husband who paid the purchase money, is void as against the latter's existing creditors, and when assailed by them the burden is on the wife of proving that the consideration did not move from her husband, but was paid by her separate money.

6. *Same.*—On a bill filed to set aside as fraudulent a transfer of stock in a corporation·to the debtor's wife, and a conveyance to the wife by the debtor's brother, at the debtor's request and instance, of certain real estate, where the defendants, by sworn answer, which was not required, positively denied the existence of complainant's debt at the time of said transfers, and in their answers and depositions positively denied other averments, which were proven by disinterested witnesses; and where their answers to interrogatories, seeking to elicit the source and extent of the wife's income and property when said transfers were made, are evasive and not full, and other evidence in the case shows that the .wife had no property when she married and no money at any time, so far as was known to those well acquainted with her. *Held*: That the wife had failed to meet the burden resting upon her to show that said stock and real estate were paid for with her money, and, further, that said transfers and conveyances were fraudulent and void as to existing creditors of the grantor.

APPEAL from Lee Chancery ʹCourʇt.

Heard ʹbefore Hon. RICHARD B. KELLY.

The bill was filed ·by the Montgomery Fertilizer Company and ·sought to ·set aside as fraudulent ʹcertain transfers and conveyances mentioned therein. The facts ·are sufficiently stated in the opinion. From a decree of the chancellor granʇting the relief prayed defendants appeal.

J. M. ʹCHILTON and BARNES & DUKE, for appellants. (1) ·The bill ·as amended was multifarious. (2) Where a ·bill iʂ filed in a double aspect each aspect ·must entitle complainant to relief. (3) The ·decree oʄ the ·chancellor was ·contrary to the evidence, citing *Robinson v. Moseley,* 93 Ala. 70.

WATTS, TROY & CAFFEY, for appellee.—(1) The payment by the husband for the stock and having it transferred to his wife was a fraud on existing creditors. *Peevey v. Cabaniss,* 70 Ala. 253. (2) On a controversy between the grantee in a conveyance and an existing creditor of the grantor as to the validity of the conveyance, the recital of a consideration is only the declaration of the grantor and is not admissible evidence against the creditor.—*McCain v. Wood,* 4 Ala. 258; *Br. Bank v. Kinsey,* 5 Ala. 9; *McGintry v. Reeves,* 10 Ala. 137; *McCaskle v. Amarine,* 12 Ala. 17; *Falkner v. Leith,* 15 Ala. 9; *Hubbard v. Allen,* 59 Ala. 283; *Harrell v. Mitchell,* 61 Ala. 270. (3) The *onus* of proving that the payment of $2,500 for the stock by the husband was not the mere voluntary gift to the wife is on the wife.—*Hubbard v. Allen,* 59 Ala. 283; *Harrell v. Mitchell,* 61 Ala. 270; *Seals v. Robinson,* 75 Ala. 363. (4) The burden of proving a valuable consideration for the conveyances was on the grantee.—*Zelnicker v. Brigham,* 74 Ala. 598; *Buchanan v. Buchanan,* 72 Ala. 55; *Gordon v. Tweedy,* 71 Ala. 202; *Hamilton v. Blackwell,* 60 Ala. 545; *Donly v. McKierman,* 62 Ala. 34; *Thames v. Rembert,* 63 Ala. 561; *Pickett v. Pipkin,* 64 Ala. 520; *Pollak v. Searcy,* 84 Ala. 259; *Calhoun v. Hannon,* 87 Ala. 277; *Lehman v. Greenhut,* 88 Ala. 478; *Robison v. Moseley,* 93 Ala. 73; *Schall v. Weil,* 15 So. Rep. 829.

HARALSON, J.—The bill was filed to set aside alleged gifts or conveyances of property by H. T. Wimberly to his wife, C. P. Wimberly, because they were voluntary, without consideration and void as to the complainant and existing creditors of said H. T. Wimberly.

1. A conveyance which is purely voluntary, not tainted with an actual intent to hinder, delay and defraud creditors, is void only as to existing creditors, but when tainted with actual fraud, is void as to subsequent, as well as to existing creditors.—*Dickson v. McLaren,* 97 Ala. 383, 388; *Seals v. Robinson,* 75 Ala. 363. Only constructive fraud is alleged in the bill. The burden was on complainant to establish the existence

of debts by H. T. Wimberly to him at the time of said alleged conveyances; and if he bought property and paid for it with his own money, taking the title in the name of his wife, the conveyance was fraudulent and void against existing creditors.—*Yeend v. Weeks*, 104 Ala. 301; *Peevey v. Cabaniss*, 70 Ala. 252.

2. It is alleged that H. T. Wimberly, on March 1, 1893, while indebted to complainant, was the owner of a large number of shares in the Opelika Compress Company, a corporation, and that on the 1st of March, 1893, he transferred twenty-five shares of stock owned by him in said company to his wife, C. P. Wimberly, which transfer was wholly voluntary, without consideration and void as against complainant and other creditors of said H. T. Wimberly.

It is also alleged, that at the same time he owned a half interest in a store house in Opelika, known as the Lightfoot store; that on the 17th November, 1894, he pretended to convey the same to his brother, T. P. Wimberly, and on the 26th December, 1894, the said T. P. Wimberly conveyed the same to C. P. Wimberly, the wife of said H. T. Wimberly, and that both of said deeds were voluntary and without consideration,—the one to said T. P. Wimberly having been executed with the understanding between him and said H. T. Wimberly, that the said T. P. should convey the property to said C. P. Wimberly, so as to put the title in her.

Afterwards, the bill was amended by adding, to the fourth section, that if mistaken as to the averment that said Wimberly transferred to his wife, C. P. Wimberly, the twenty-five shares of stock held by him in said corporation, then complainant averred, that said C. P. Wimberly had no means of her own, and if the stock was issued by the corporation directly to her, or if the same was purchased by her from any other person, the money paid by her therefor, was the money of her husband, H. T. Wimbrely, and that said money was given to her by her husband and invested in said stock, and that there was no consideration for the said gift, by said H. T. Wimberly to her, and the same was a fraud upon complainant and the other creditors of said H. T. Wimberly.

The bill was further amended by adding to its sixth section the averment, that if mistaken in the averment, that there was no consideration passing from the said T. P. to said H. T. Wimberly, nor from the said C. P. to the said T. P. Wimberly for said half interest in said store house, then it is averred, that if there was any money paid by C. P. to T. P. Wimberly for said half interest in said store house, the money so paid was the money of H. T. Wimberly; that said C. P. Wimberly had no means of her own, and whatever money may have been paid by her to the said T. P. Wimberly for said interest in said house, was given to her by her husband, the said H. T. Wimberly; that there was no consideration for the gift, and the same was, as to complainant and the other creditors of said H. T. Wimberly, void and of no effect; and that the gift of the money by said Wimberly to his wife to buy the stock in said compress and the half interest in said store house, was made when the debts due by said. H. T. Wimberly to complainant were in existence.

3. The original and amended bills were demurred to, and the demurrers were overruled.

The grounds of demurrer to the original bill, as insisted on, were, in substance, that the stock could not be subjected to debts not in existence when the transfer was made. The bill, as we take it, makes no such claim; and, moreover, it shows that debts of complainant were in existence at the time the alleged transfers were made.

The other ground is, that there is such a misjoinder of causes of action, as makes the bill multifarious. "It is a general rule in courts of equity, that a bill is not multifarious, which unites several matters distinct in themselves, but which together make up the complainant's equity and are necessary to complete relief."— *Ston v. Knickerbocker L. Ins. Co.*, 52 Ala. 589, 592. To an ordinary creditor's bill, it is no objection, that a number of fraudulent grantees or donees are made parties defendant, although they claim different portions of the property by distinct conveyances. Unity of fraudulent design, when apparent, imparts to the suit singleness of object and purpose.—*Handley v. Heflin,*

84 Ala. 600; *Collins v. Stix*, 96 Ala. 338; *Williams v. Spraggins*, 102 Ala. 424. If it be true that several fraudulent grantees or donees of a debtor may be joined as defendants to a creditor's bill, who claim different parts of his property by separate gifts or conveyances, much more, as is the case here, may a single grantee or donee thereof, holding by different conveyances be proceeded against by a creditor, to subject the same to the payment of his debt.

In this case, the alleged fraudulent gifts or conveyances, not being to different persons, but to one person, and the object of the bill being to subject the property thus disposed of, to the payment of complainant's debts, against the grantor, there being, as is made to appear, unity of fraudulent design to put the property beyond the reach of creditors of the grantor, the bill was not subject to the charge of multifariousness.

4. Under our practice a bill may be filed in a double aspect, embracing alternative averments of relief, provided each aspect entitles complainant to substantially the same, and not to inconsistent and repugnant reliefs and different defenses.—*Adams v. Sayre*, 70 Ala. 318; *Hall & Farley v. Henderson*, 114 Ala. 601. An amendment of a bill setting up an alternative ground of relief, is always proper, when the matter of amendment might have been stated in the alternative in the bill as originally filed.—*Winston v. Mitchell*, 93 Ala. 554. The relief sought here by the amendments was the same in character, between the same parties, in reference to the same subject-matters as that sought in the original bill, and were subject to the same defenses. The amendments were entirely proper, and the demurrer to the bill as amended was properly overruled.

5. The complainant by clear and satisfactory proof, established its debts against the alleged fraudulent debtor, H. T. Wimberly, the larger part of which were due at the date of said alleged conveyances or gifts to his wife, and all of them at the date of the filing of the bill, and contracted anterior to said conveyances.

The answers of H. T. and C. P. Wimberly were the same in substance, as to the defense set up in them. It

was shown, that the debts were contracted at Green-
ville, Alabama, in the name of H. T. Wimberly and H.
T. Wimberly & Co. They each denied the alleged in-
debtedness of H. T. Wimberly to complainant; denied
that said H. T. was ever in business in Greenville, or
that any business was ever carried on there, in his name
by his consent; denied each and every allegation of the
original and amended bills, as to the stock of said Com-
press Company and the half interest in said Lightfoot
store having been purchased by said C. P. Wimberly
with money furnished to her by her said husband, and
that she had no money with which to make said pur-
chases; and sets up that she bought the stock and in-
terest in the store house with her own money.

That said H. T. Wimberly did carry on business in
Greenville at the time said debts were contracted, and
that they were contracted by his authority, and were
debts for which he was personally responsible, is shown
by a great mass of evidence and by his own written
acknowledgment. On the 4th of November, 1895, he
made an assignment for the benefit of creditors. In
this instrument he recited, "Whereas, I, H. T. Wimberly
* * * did give a written power of attorney to M.
W. Wimberly to carry on for me, and in my name, a
mercantile business in Alabama, in the city of Green-
ville; and whereas, afterwards, I entered into a part-
nership with J. W. Wimberly, the wife of M. W. Wim-
berly, in said business; and, whereas, the said M. W.
Wimberly has used my name, without my knowledge or
consent, in matters not connected with said business,
which I have and do continue to repudiate, whenever
the same is brought to my knowledge; and, whereas,
the said business has brought me in debt; and, whereas,
I am desirous of having paid and settled all the debts
and liabilities relating to the said business carried on
in my name, and also the said partnership business with
J. W. Wimberly, and securing to myself whatever may be
left, after all of such debts and liabilities have been
paid and settled," etc., etc.; and with this as the object
therefor, he proceeded and made a general assignment
of all his property, including said mercantile business,

8s

to C. E. Hamilton for the benefit of his creditors. It is not pretended that complainant's debts were not contracted in the due course of that business, carried on by said Wimberly, and Wimberly & Co. at Greenville. Singular enough, in their answers, which, without being required of them, were sworn to, and in their depositions taken in the cause, the deny that H. T. Wimberly had any connection with said business so carried on in Greenville. That this was not true, and that he owed the debts to complainant as claimed is put by the evidence beyond all controversy. No argument to sustain these denials is attempted by counsel.

6.    The only other question is, was the money that paid for the shares of stock in said Compress Company, held by C. P. Wimberly, her money or the money of her husband; and did she, from her own funds pay for the half interest in the Lightfoot store house; or was it a gift to her from her husband?

It is well settled, that a conveyance or transfer of property made to a wife by a third person, at the instance of her husband who paid the purchase money, is void as against the latter's existing creditors, and when assailed by them, the burden is on the wife of proving that the consideration did not move from the husband, but was paid by her separate money.—*Kelley v. Connell*, 110 Ala. 543. "To the lifting of such burden, affirmative averment of the facts relied on as constituting the consideration is as essential as convincing proof of their existence." The laboring oar in such case is upon defendant, not simply to deny that there was no consideration, as averred in the bill, but to state the affirmative fact, that there was such consideration, in what it consisted, and how it was paid, and to support these averments by evidence. Without such averments in the answer, the complainant is not fully apprised as to the defense set up by respondent, the burden of which is on her to prove, and is placed at great disadvantage in meeting it.—*Robinson v. Moseley*, 93 Ala. 70. In that case it was further held, that "Where the contract is between near relatives, as between husband and wife, father and son and the like,

it will be subjected to a closer scrutiny　＊　＊　＊　than if the parties to it were strangers."—*First N. Bank v. Smith,* 93 Ala. 97. Furthermore, "In a contest between creditors and the wife, there is and should be a presumption against her which she must overcome by proof."—*Seitz v. Mitchell,* 94 U. S. 580; *Kelley v. Connell, supra; Wood v. Riley,* 121 Ala. 100.

In *Harrell v. Mitchell,* 61 Ala. 270, it was held, that when badges of a fraudulent conveyance appear, *bona fide* creditors have the right to require, that these shall be explained, and all unfavorable presumptions arising from them repelled by evidence that the conveyance is founded on an adequate valuable consideration, paid or secured to the grantor, and that clear evidence of ability to make the purchase, is vital to sustain the transaction.—*Watts v. Burgess,* in MS.

The averment is made in the amended bill that Mrs. Wimberly had no means of her own with which to make the alleged purchases, and that the money paid by her therefor was the money of her husband. This averment is met in the answers of the husband and wife, by a mere denial of it. In her original answer, as to the shares of stock in said Compress Company, she merely states that she purchased twenty-five shares therein of the value of $2,500 from one Hitt, which shares she still owns. The husband in his answer, denies that he ever owned any stock in said company, as averred in the original bill. As to the purchase of the half interest in said store house, they both answer in substance the same thing, that T. P. Wimberly purchased the same from H. T. Wimberly for $1,500, on the 17th November, 1894; that there was no understanding or agreement between them, that he should afterwards convey the property to Mrs. Wimberly, and that, afterwards, she paid said T. P. Wimberly $1,500 for the same, and the money was her own separate property.

There is no averment in the answer, how, when or by what means she acquired the money she paid for these properties, amounting to $4,000. Both husband and wife were examined as witnesses in their own behalf. In the cross-interrogatories filed to them, they were

interrogated particularly as to when Mrs. Wimberly was married; if she had any property at that time, and if so, of what it consisted and what became of it; if she acquired any after marriage, and if so, when, of what it consisted and what became of it, and if she received any money, to state specifically the time she received it, from whom, and on what account, etc. H. T. Wimberly answered, that he and Mrs. Wimberly were married in 1882. "She had money at the time of her marriage, which she invested in different ways. She did acquire some after her marriage. He cannot tell what property she acquired. She speculated. He cannot tell the time she received the same, from whom she received it and on what account she received it."

Mrs. Wimberly answered, "She had at the time of her marriage property of her own and it consisted of money. The money was invested, and she has some of it yet. She had acquired some property after her marriage by speculation in real estate, and has some of this property yet."

These answers are evasive, and not responsive in any satisfactory degree to the interrogatories propounded to them. They do not show her ability to make the alleged purchases of the stock and half interest in the store, and fall far short of the evidence required by the rules above laid down, to establish the defense set up. The evidence shows that Mrs. Wimberly before her marriage lived with her mother, a widow; that they were poor people, and the mother kept a boarding house at one time and at another they both taught school and took in sewing for a living, and no one of the many witnesses examined, who were well acquainted with Mrs. Wimberly, knew of her having any money. The evidence tended to show that she and her mother had no money at any time before her marriage, deposited in any of the banks of the city. If she had any at any time, those well acquainted with her did not know of it.

The positive denials by these defendants of facts abundantly proved by other witnesses, does not authorize the same weight to be given to their evidence, as without such denials, might have been accorded to it. When

this fact is considered, taken in connection with the evasive and unsatisfactory answers they make to the interrogatories propounded to them, and the very full and clear evidence of other witnesses on the same subjects to which they depose, we cannot escape the conclusion that the money with which said stock was purchased was the money of H. T. Wimberly; that none of her money went to the purchase of the half interest in said store house, and that what was done was a device of the husband to place the title to the same in his wife, as a gift to her, and to·put it beyond the reach of his creditors.

We find no error in the decree of which defendants can complain.

Affirmed.