# Bray & Landrum v. Ely.

*Statutory Trial of the Right to Property.*

1. *Fraudulent conveyances; preference by insolvent debtor.*—Before the enactment of the recent statute preventing such transactions (Acts 1892-93, p. 1046), an insolvent debtor could select one or more of his creditors and pay them in full, though he thereby disabled himself to pay his other creditors anything; and when assailed by other creditors such transaction was valid without regard to the debtor's motive or intention and although the grantee creditors had knowledge of his insolvency and knew the necessary effect of the transaction, if (1) the debt was *bona fide* and enforceable and not simulated; (2) the payment was absolute, and if made in property, the property was not materially in excess of the debt; and (3) no pecuniary benefit, or consideration of value, other than the liquidation of the debt, would enure or was secured to the debtor.

2. *Argumentative charges; their giving or refusal not revisable.*—The giving or refusal to give argumentative charges is within the discretion of the trial court, which is not revisable on appeal.

3. *New trials; when refusal of trial court reversed on appeal.*—The judgment of a trial court refusing a new trial on the ground that the verdict is unsupported or contrary to the evidence, will not be reversed on appeal, unless, after allowing all reasonable presumption of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust.

4. *Same; when verdict contrary to instructions given.*—The fact that the verdict of a jury is contrary to instructions given at the request of one of the parties to a suit constitutes no ground for granting a new trial, since the verdict negatives the existence of the facts on which such instructions were based, and the finding against the existence of such facts renders the verdict in harmony with, and not repugnant to, them.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. JAMES T. JONES.

This was a statutory trial of the right to property, which was instituted by the appellee, Morris Ely, inter-

posing a claim to a stock of goods, which had been levied upon on February 10, 1893, under a writ of attachment issued on the same day at the suit of Bray & Landrum against Sol Elkan. The ground of the attachment was that Elkan, the defendant, had fraudulently disposed of his goods. On the trial of the cause, as is shown by the bill of exceptions, the testimony for the plaintiff in attachment tended to show, that at the time of the levy of the attachment, the goods levied upon were in the store-house which had been occupied by Sol Elkan, and Elkan was in possession of them, selling and disposing of them as if they were his own ; and that the same clerk who had been employed by Elkan was also in the store. It was also shown that on December 6, 1892, the defendant in attachment, Elkan, received from the railroad company at Demopolis, a box of goods addressed to Sol Elkan, and receipted for the same, and that these goods were placed in stock with the other goods, and were being sold. The testimony for the plaintiff also showed that the books of Elkan, which were levied upon, had been changed between the time they were first examined by one of the attorneys for the plaintiffs and the trial of the case, and that after the alleged sale of the stock of goods by the defendant in attachment to the claimant, the same books were used by the claimant, and entries were made therein in the same manner as those made by the defendant before the alleged sale.

The testimony for the claimant tended to show that on November 28, 1893, Sol Elkan made a bill of sale of his entire stock of goods to the claimant, Morris Ely, in payment of a debt for $2,485.17 ; that this debt was *bona fide*, and was then due, and that the bill of sale was made to the claimant for the purpose of protecting the same, because, as stated by the defendant, he was pressed by his other creditors, and being unable to pay them all, he wanted to prefer the claimant ; that the appraised value of the goods sold to Ely, as shown by the inventory, which had been taken the next day after the bill of sale, was $2,960, "and that the fair and reasonable value of said stock of goods was the amount of claimant's debt, $2,485.17." The claimant testified that in this sale there was no benefit reserved to the defendant in attachment, and that after the sale the claimant employed the said Sol Elkan as a clerk paying him a stipulated salary,

and also employed the same clerk who had been employed by Elkan, paying him a stipulated salary; but that there was no definite time agreed upon as to the length of such employment, nor was there any thing said about such employment at the time of the alleged execution of the bill of sale to the claimant. The claimant further testified that the goods which were received by the defendant, after the sale of his goods to the claimant, were paid for by the latter out of his own money, and by his direction were placed among the other goods in the store.

At the request of the claimant, the court gave the following written charges, to the giving of each of which the plaintiffs duly excepted : (1.) "If the jury believe from the evidence that Elkan, although insolvent, or in failing circumstances, made an absolute sale of his property to Ely, in payment of an antecedent debt by way of preference over other creditors, the debt being honestly due, and the price or consideration received being fair and adequate, and no interest being reserved by Elkan, his mere fraudulent intent does not vitiate the conveyance, because the act itself was legal, and fraud without damage gives no right of action, and these concurrent facts rebut all inferences that might be drawn from attendant badges of fraud, and impart validity to the conveyance as an allowable preference of said Ely." (2.) "If the jury believe, from the evidence, that Elkan, although at the time insolvent or in failing circumstances, made an absolute sale of the property in controversy to Ely, in payment of an antecedent debt, by way of preference over other creditors, the debt being honestly due, and the price or consideration received being fair and adequate, and no interest being reserved by Elkan, his mere fraudulent intent does not vitiate the conveyance because the act was legal, then the jury will find for the claimant, Ely." (5.) "If the jury believe from the evidence that Elkan paid Ely an antecedent debt by conveying the property to him, that the debt was honestly due, and was not materially less than the value of the property conveyed, and no interest or benefit was reserved to Elkan, then the coveyance was lawful and is not affected by fraudulent intent on the part of both of the parties thereto, then they should find for the claimant, Ely." (6.) "If the jury believe from the evidence

that Elkan, the insolvent debtor, paid an antecedent debt by conveyance of his property to the creditor Ely, if the debt was honestly due and not materially less than the value of the property conveyed, and no interest or benefit was reserved to the debtor, Elkan, then the conveyance was lawful, and the jury will find for the claimant, Ely, although a fraudulent intent may have existed at the time on the part of one or both of the parties thereto."

There was judgment for the claimant, after which the plaintiffs made a motion for a new trial, upon the grounds stated in the opinion, and duly excepted to the court's overruling their motion. The plaintiffs appeal, and assign as error the giving of the charges requested by the claimant and the overruling of their motion for a new trial.

TAYLOR & ELMORE, for appellant.—The conveyance was fraudulent, because of the reservation of the benefit to the defendant or debtor.—*Stephens v. Regenstein*, 89 Ala. 561; *Harris v. Russell*, 93 Ala. 59; *Bank v. Smith*, 93 Ala. 97; *Page v. Francis*, 97 Ala. 379.

The charges given at the instance of the claimant should have been refused.—*Barnett v. State*, 83 Ala. 40; *King v. Pope*, 28 Ala. 601; 3 Brick. Dig., 113, § 108.

ANDERSON & CUNNINGHAME, *contra.*—The charges given at the request of the appellee were legal and proper.—*Pollock v. Meyer*, 96 Ala. 172; *Hodges v. Coleman*, 76 Ala. 103. The possession of Elkan was explained away, and therefore afforded no evidence or presumption of fraud, *prima facie* or otherwise.—*Ullman v. Myrick & Bowman*, 93 Ala. 532.

BRICKELL, C. J.—The principles which govern the determination of the validity of sales or conveyances made by an insolvent debtor, or a debtor in failing circumstances, to a creditor in payment of a preexisting debt, having notice of his condition or insolvency, when the sale or conveyance is attacked for fraud by other creditors, have been of such frequent consideration and decision, that it would seem a necessity for their reiteration could scarcely occur. So far as now relevant, in *First National Bank of Birmingham v. Smith*, 93 Ala. 97,

they were concisely and clearly summarized by Chief
Justice STONE : "An insolvent debtor may select which
of his creditors, one or more, he will pay, and pay them
in full, and thus disable himself to pay the others any-
thing ; and it makes no difference if the one or more pre-
ferred creditors know the effect of the transaction will
be to deprive the debter of all means with which to pay
his other debts. Nor is the wish, motive, or intention
of the debtor a material inquiry, if the requisite condi-
tions exist. These conditions, in a case like the pres-
ent, are : *First*, the debt must.be *bona fide*, and enforce-
able, not simulated. *Second*, the payment must be ab-
solute ; and if made in property, must not be materially
in excess of the debt. *Third,* no pecuniary benefit, or
consideration of value must enure or be secured to the
debtor.

The several instructions given the jury on the request
of the appellee, state these principles substantially,
though in varying language. Some, if not all of them,
may be subject to the objection that they are argumenta-
tive, now urged by the appellants, and for that reason
could have been properly refused by the court below.
There is no error in the refusal of an argumentative instruc-
tion, for the reason that instructions should be clear and
concise, presenting only the point or matter of law, on
which the party presenting them may rely. If the party
requesting them will not so frame the instructions, but
passing beyond the presentation of the point or matter of
law, injects an argument of the case, the trial court does
not err in the refusal of the instruction. But, in our
practice, the giving or refusal of such instructions rests
largely in the discretion of the trial court, which is not
revisable on error.—*Whilden v. M. & P. Bank*, 64 Ala.
1. We do not regard either of the instructions as as-
suming as proved, or as asserting, any fact, either disput-
ed or dependent on the weight or credibilitv of the evi-
dence. If it was apprehended that either of them gave
an undue prominence to any phase of the evidence or of
the case, the appellants should have protected them-
selves from injury, by a request for explanatory or ad-
ditional instructions.

There were three causes or grounds assigned in the
motion for a new trial. The first was, that the verdict
of the jury was contrary to the general charge of the

court. The charge is not incorporated in the record, and in its absence, there can be no revision of the refusal of the trial court to sustain the motion for this cause. The second ground or cause, alleges that the verdict is contrary to instructions given on the request of the appellants. The verdict negatives the existence of the facts on which these instructions were based. Unless the facts had been proved to exist, . there could not be in the verdict repugnancy to, or inconsistency with, those instructions. The finding against the existence of the facts, renders the verdict in harmony with, and not repugnant to them. The third ground or cause assigned was that the verdict was contrary to the evidence. In *Cobb v. Malone*, 92 Ala. 630, the rule was laid down, (and there has been some frequent approval of it), that an order refusing a new trial on the ground that the verdict is unsupported by, or contrary to, the evidence, will not be reversed on appeal, "unless, after, allowing all reasonable presumption of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court, that it is wrong and unjust." We are not convinced that the verdict does not find support in the evidence.

Let the judgment be affirmed.